FOURNET, Chief Justice.
 

 The defendant, Robert Lewis, having been fined $200 and sentenced to 60 days in jail following his conviction on a charge by Bill of Information with the offense of aggravated assault,
 
 [1]
 
 applied for and was
 
 *879
 
 granted a writ of certiorari, but limited to a review of Bill of Exceptions No. 2.
 

 The undisputed facts in so far as pertinent show that on the night of November 20, 1965, the defendant, a local representative of CORE, who had previously received numerous bomb threats because of his participation in civil rights activities, while asleep with his wife and four children in their home in Ferriday was suddenly aroused by the explosion of a bomb thrown at the front of his home, which set it on fire. The defendant, fearful for the safety of his family and himself, loaded his shotgun and then ushered his wife and children out the back door; and when he, with the assistance of his neighbors, had practically extinguished the fire Ferriday Police Officer Loftin and Patrolman Myrick arrived, parking in the street near the defendant’s home. Thereupon the defendant, who was in the street carrying his shotgun with the barrel in the air, addressed the officers in an excited manner, in effect demanding to know where they had been knowing his house was going to be bombed.
 
 [2]
 
 Then Officer Loftin, who was driving the car, opened the left car door and ordered the defendant to give him the shotgun which he refused to do; and after a brief scuffle the gun was either handed ter Herman Brown or it was taken from the defendant by Brown, from whom it was finally retrieved by Officer Loftin, who was also in the scuffle for the gun, while the defendant was being placed in the police car by Officer Myrick. Pie was then taken to jail and, on December 6, 1965, was charged by Bill of Information with aggravated assault and resisting arrest.
 
 [3]
 
 Prior to the commencement of the trial on January 6, 1966, Bill of Exceptions No. 2 was reserved to the ruling of the trial judge in granting the defendant’s motion for sequestration of the witnesses when he ordered the sequestration of the defense witnesses but exempted the state’s only two witnesses from the rule.
 

 Under the provisions of R.S. 15 371,
 
 [4]
 
 it is within the sound discretion of
 
 *881
 
 the trial judge to order the sequestration of the witnesses at any stage of the trial in a criminal case;
 
 [5]
 
 and it is only when the exercise of such discretion is arbitrary or unreasonable, to the prejudicial injury of the defendant in obtaining a fair and impartial trial, that we would be warranted in setting aside a verdict.
 
 [6]
 
 The reasons for the rule, i. e., to remove the witnesses so they cannot hear or .see what is happening at the trial, are to prevent the witnesses from being influenced by the testimony of other witnesses and to also allow effective cross-examination on certain aspects of the case.
 

 We think that the decision of this court in State v. Carter, 206 La. 181, 19 So.2d 41, is controlling in the case at bar. The facts ■of that case were peculiarly similar in so far as pertinent to the facts of the case at bar. Those were as stated by the court, “ * * * the defendant, a colored man, was charged with attempting to murder two white deputy sheriffs. His plea was self-defense. The two deputies who were assaulted and who were excluded from the courtroom, on the defendant’s motion, testified that they were shot by the accused without any cause or provocation. The defendant, on the other hand, testified that he shot at the deputies with one of their own guns after being compelled to disarm them in order to save his own life, after he had been severely and brutally beaten by one of the deputies with the gun. The three deputy sheriffs and district attorney’s investigators were permitted to remain in the courtroom during the entire trial, although counsel for the defendant, in his motion for a sequestration before the trial started, apprised the judge of the fact that these witnesses would be used against the accused and would testify to purported verbal admissions said to have been made by the defendant.” In reversing the defendant’s conviction and sentence this court said that the trial judge erred, “in exercising his discretion as he did, under the facts and circumstances of this case, and that the accused suffered serious injury and prejudice to his substantial rights as a result thereof.”
 

 In the instant case the defendant, a colored man, was charged with aggravated assault of a white police officer of Ferriday by pointing the muzzle of a shotgun in his stomach in the presence of Patrolman Myrick. These two officers, as stated before, were the only two witnesses for the state and both testified that the defendant
 
 *883
 
 lowered his shotgun shoving it in the stomach of Officer Loftin without any provocation. The defendant, on the other hand, testified that the barrel of the shotgun was at no time lowered or placed in Officer Loftin’s stomach but remained at all times up and above his shoulder. The defendant stated that his only purpose for having the gun in his possession at the time was his fear of what might happen to him and his family upon leaving his blazing house in view of the many threats he had previously received which had apparently become a reality, and that under those circumstances he was reluctant to surrender his gun without first being told why.
 

 The trial judge did not append a per curiam to Bill of Exceptions No. 2, but the record reveals that in making his ruling on this phase of the case he merely stated, “It is a rule in this court that officers are not subject to sequestration during a trial because they are officers of the court.” In his answer to the writ, however, he stated that his ruling was in accordance with “a longstanding rule of * * * Court in misdemeanor cases that officers of the court be exempted from sequestration except for some unusual circumstances * * He said the reason for the application of “this custom” was that the officers testified from notes and a report of the arrest, hence there would be no damage nor prejudice to the defense because one officer might hear the testimony of another officer. Further,, he was of the opinion that “even if error was committed in not excluding Officer Myrick from the courtroom, this error had no effect on the ultimate outcome of the case since the conviction of the defendant was sustained by the testimony of Officer Loftin and on some of the defense witnesses’ own testimony. The issue of credibility of the defense witnesses as opposed to the-prosecution witnesses was never an issue in the case. The testimony of the Defense witnesses was in many respects contradictory-to the statements given by the Defendant himself and, as stated above, in the case of at least two Defense witnesses and certain-implications in the testimony of other of the Defense witnesses, the testimony of Officer Loftin was completely corroborated.”
 

 In the Carter case, supra, this-, court held that the trial court in exempting-officers from an order sequestering witnesses because of a rule of court exempting, such officers was neither sound nor reasonable ;
 
 [7]
 
 and in holding that “ * * * the-article (R.S. 15:371) does not give a judge an absolute and unreviewable discretion but one that must be exercised in such a way as. not to deprive the accused of his right to a fair and impartial trial” reasoned that “If
 
 *885
 
 ■ district courts could make rules and rulings that would in effect nullify the provisions ■of the article, the right granted to the accused therein would be a useless and vain •one.”
 

 Regretfully, our appreciation of the evi-dence does not support the factual findings of our learned brother below. Initially, we might point out that the evidence shows that the testimony of Officers Loftin and Myrick was given from their independent recollection; and we are at a loss for his conclusion that “the issue of credibility of the Defense witnesses as opposed to the prosecution witnesses was never an issue in the case.” While it is true that in many im-material aspects, the testimony of the several defense witnesses does not coincide with ■that of the defendant, on the crucial issue, I. e., whether or not the defendant pointed the barrel of the shotgun in the stomach •of Officer Loftin, all of the defense witnesses except two
 
 [8]
 
 testified that Officer .'Loftin was not threatened nor assaulted ■with the gun as was testified to by the two ■officers.
 

 While the ruling in the Cartel-case involved a trial by jury, whereas the case at bar was tried by the judge alone, nevertheless, the rules by which the courts are guided in criminal cases whether by the judge alone or by the jury are the same. The only question involved in this case is whether or not the reasons given by the trial judge show an abuse of his discretion under the facts and circumstances of the case.
 

 As previously pointed out, the xea-son given by the trial judge in his ruling in this case was neither legal nor sound, and the basis for his conclusion that the cause of the defendant was not prejudiced is not supported by the record. We think, under the facts and circumstances of this case, it was a distinct advantage to the state and a disadvantage to the defendant to allow Patrolman Myrick to remain in court and testify not only in chief but also in rebuttal; and for all practical purposes the defendant was deprived of a substantial right to the effective cross-examination of Officer Myrick.
 

 For the reasons assigned, the conviction and sentence are annulled and the case is remanded to the lower court -for a new trial.
 

 [1]
 

 . R.S. 14:37 provides: “Aggravated assault is an assault committed with a dangerous' weapon.
 

 “Whoever commits an aggravated assault shall be fined not more than three hundred dollars, or imprisoned for not more than two years, or both.”
 

 [2]
 

 . Officer Loftin testified he did not “recall” hearing the defendant say his house '/had been bombed at the time of the arrest, but, strangely, under cross-examination he testified he heard the crowd say the house had been bombed.
 

 [3]
 

 . This second charge was nolle prossed.
 

 [4]
 

 .
 
 R.S. 15:371 provides: “The judge may, at any stage of the trial, order the sequestration of the witnesses. As soon as such order shall have been given it shall be the duty of the sheriff to take charge of the witnesses and to remove them to a place whore they shall not be able to sec or hoar any of the proceedings taking place in court. Nor shall there be, while they shall be sequestered, any communication between them and others or between them and any witness who shall have testified. Any disregard of these provisions by a witness shall disqualify him from testifying and shall subject him to punishment for contempt; provided, that the judge may in all cases, in his discretion, permit any witness to testify; provided, further, that the issuance of such order shall not deprive either party of the right of calling or ex
 
 *881
 
 amining as a witness one wlio shall not have obeyed the order of sequestration, when such party shall show that the witness remained in court or otherwise disobeyed the order without the knowledge and without the connivance of the party calling him.”
 

 [5]
 

 . State v. McAllister, 244 La. 42, 150 So. 2d 557; State v. Rogers, 241 La. 841, 132 So.2d 819; State v. Lea, 228 La. 724, 84 So.2d 169; State v. Smith, 216 La. 1041, 45 So.2d 617; State v. Carter, 206 La. 181, 19 So.2d 41.
 

 [6]
 

 . See, State v. Palmer, 227 La. 691, 80 So.2d 374.
 

 [7]
 

 . This court specifically overruled the holding in the case of State v. Bates, 140 La. 833, 74 So. 165, relied on by the prosecution in State v. Carter, that sueh. rules were proper.
 

 [8]
 

 . Roosevelt Bosley testified lie was not present when the alleged assault occurred as ho had gotten wet while fighting the fire and wont home to change his shoes. •Ghazdie Hankson stated he was inside the house fighting the fix’e when the officers arrived, and that by the time he came outside they had already picked up the defendant and left.