245 So.2d 335

**STATE of Louisiana**

v.

**James RAYMOND, alias James Ramos.**

**No. 50605.**

Feb. 24, 1971.

Dissenting Opinion March 8, 1971.

Rehearing Denied March 29, 1971.

**2**

the sequestration of the witnesses at the trial, and the admission in evidence of an oral statement of the victim made before his death.

Makar & Whitaker, John Makar, Natchitoches, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Ronald C. Martin, Dist. Atty., for plaintiff-appellee.

· SANDERS, Justice.

This is a criminal prosecution. The charred body of a person identified as James Quinn was found in a burned building near Northwestern State College at Natchitoches. Medical experts reported that death resulted from a gun shot wound, rather than from fire. On November 15, 1967, the investigating officers arrested James Raymond for the homicide. The Grand Jury of Natchitoches Parish later indicted him for murder. After hearing the evidence, the jury found him guilty of manslaughter, and the trial judge sentenced him to a term of seven years in the Louisiana ·State Penitentiary.

The defendant Raymond has appealed, relying upon nineteen bills of exceptions reserved in the trial court.[1] The main legal questions presented relate to the denial of defendant's right to a speedy trial,

## BILL OF EXCEPTIONS NO. 1: *Denial of the Right to a Speedy Trial.*

The defendant reserved Bill of Exceptions No. 1 to the overruling of his motion to quash the indictment, based upon the denial of his right to a speedy trial.

Article 1, Section 9 of our State Constitution grants to a defendant the right of a speedy trial in a criminal prosecution. The right to a speedy trial is also guaranteed by the Sixth Amendment of the United States Constitution. Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

In the recent case of Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), the United States Supreme Court vacated a state conviction for a seven-year delay. Through Chief Justice Burger, the Court held:

"The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality on the need to have charges promptly exposed. If the case for the prosecution calls on the accused to meet charges rather than rest on the infirmities of the prosecution's case, as is the defendant's right, the time to

---

1. In this court, the defense abandoned Bills of Exceptions Nos. 11 and 12.

meet them is when the case is fresh. Stale claims have never been favored by the law, and far less so in criminal cases. Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial. This is brought sharply into focus when, as here, the accused presses for an early confrontation with his accusers and with the state. Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable. Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the state. On this record the delay with its consequent prejudice is intolerable as a matter of fact and impermissible as a matter of law."

In the present case, the defendant was arrested on November 15, 1967; the Grand Jury indicted him for murder on November 9, 1968; and the trial occurred on February 12, 1970.

■ The delay between indictment and trial in the present case exceeds one year. The defendant, however, filed no formal motion for an earlier trial.[2] The record reflects that one postponement was at the

2. Defense counsel apparently wrote a letter to the District Attorney requesting a

behest of defense counsel. Moreover, the defendant has made no showing of trial prejudice. See Dickey v. Florida, supra.

Concededly, trial delays of the length disclosed in the present case are prejudicial to the administration of criminal justice. Such delays should be substantially reduced in the interest of improving our system of justice. When all of the circumstances are considered, however, the delay is insufficient to be an unconstitutional denial of a speedy trial, warranting the discharge of the defendant.

### BILL OF EXCEPTIONS 2, 3 and 14:
#### Sequestration of Witnesses.

On motion of the defendant, the trial judge ordered a sequestration of witnesses under Article 764 of the Louisiana Code of Criminal Procedure. He exempted from that order, however, the law enforcement officers and medical experts. He instructed the State's witnesses to discuss the case with no one except "counsel for the State."

Bills of Exceptions Nos. 2 and 14 complain of the exemption of the witnesses from the sequestration. Bill of Exceptions No. 3 complains of the trial judge's order to the State's witnesses limiting discussion to the district attorney. Defendant contends that these witnesses should have been

trial date before the case was assigned for trial.

instructed they could also discuss the case with defense counsel.

Article 764 of the Louisiana Code of Criminal Procedure provides:

"Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice."

■ The purpose of this Article is to prevent witnesses from being influenced by the testimony of prior witnesses and to strengthen the role of cross-examination in developing the facts. See State v. Lewis, 250 La. 876, 199 So.2d 907.

■ The trial court, however, may modify the exclusion order in the interest of justice. A modification of the order will not be disturbed on appeal in the absence of an abuse of discretion. In testing the exercise of discretion, the circumstances of each case must be considered. State v. Lewis, supra; State v. Barton, 207 La. 820, 22 So.2d 183.

In his *Per Curiam*, the trial judge states that he modified the order in the interest of justice, obviously meaning that he did

so to facilitate the trial of the case with no prejudice to the defendant.

■ The two expert witnesses exempted were Dr. Charles E. Cook, parish coroner, whose duties prevented him from being present for the opening of the trial, and Dr. Willis Butler, an experienced forensic pathologist from Shreveport. The trial judge, of course, recognized that Dr. Cook could not conveniently be made subject to the rule because of his absence. A state trooper was also absent on the opening day of trial. Each of the remaining law enforcement officers testified only to the discovery of the crime or to a minor segment of the factual picture. The overriding factual issue was whether defendant had any connection with the crime. The circumstantial evidence linking defendant to the crime was brought forward by a score of other witnesses, placed under the rule and in charge of a deputy sheriff. We find nothing in the record to suggest prejudice to the defendant. Considering all the circumstances, we conclude there was no abuse of the discretion vested in the trial judge.

■ The instruction limiting discussion with the State's witnesses to the district attorney was also a modification of the order. As provided in Article 764, the normal instruction allows excluded witnesses to discuss the facts or testimony with the "district attorney or defense counsel." The

primary purpose of the instruction, of course, is to prohibit them from discussing the case with other witnesses.

The authority given the trial judge to modify the order certainly includes the authority to make the instruction to the witness stricter than the normal instruction mentioned in the Article.

At no time during the trial did defense counsel request special permission of the judge to discuss the case with any of the witnesses. One of the witnesses excluded was summoned by both the State and the Defense. The defense, however, did not use this witness. A trial judge presiding in a criminal case has a far better knowledge of the conditions at the trial than does an appellate court looking at the cold record. Under all the circumstances, we are of the opinion he did not abuse his discretion in instructing the witnesses.

We conclude these Bills of Exceptions lack merit.

## BILLS OF EXCEPTIONS 15 and 15A:

*Admission in Evidence of
Victim's Statement.*

The State called John Luther Jackson as a witness. He testified that on November 12, 1967, about 7:00 p. m., (several hours before the alleged homicide) the victim, James Quinn, was at Chip's Place. As the defendant approached in his automobile and inquired as to the victim's whereabouts, the victim moved behind a tree.

Over defense objection, the State elicited the following additional testimony:

"Q. Why did he say he was hiding?

"A. Because that punk [referring to defendant] would want him * * * [to have abnormal sexual relations with him] tonight, and he hid behind the tree.

"Q. It was after he made the statement that he went and hid behind the tree?

"A. That's right. He said that and then he hid behind the tree.

"Q. And who was coming at that time?

"A. Mr. Raymond."

We construe the testimony in this sequence: As the defendant approached, the victim declared, that punk will want me to have sexual relations with him tonight, and then moved behind a tree.

The defense strongly contends that the victim's utterance was inadmissible, because it was hearsay and connected the defendant with another crime, that is, sodomy.

The trial judge admitted the utterance as evidence of the victim's state of mind. He instructed the jury that the utterance was not to be considered as evidence of the truth of the facts recited.

Subject to several exceptions, hearsay evidence is inadmissible in a criminal prosecution. LSA–R.S. 15:434. The hearsay rule generally excludes out-of-court statements offered to prove the truth of the matter contained in them. The reason underlying this rule is that such statements are made without an oath and their truth cannot be tested by cross-examination in the presence of the trier of fact.

In the present case, one factual issue is whether the defendant was with the victim at the time of the alleged homicide, several hours after the present incident. The state of mind of the defendant is important insofar as it either increases or decreases the likelihood that contact between the victim and defendant occurred. Hence, evidence of the victim's fear of defendant or his emotional reaction to the presence of defendant is relevant.

The victim's state of mind, of course, can be proved by circumstantial evidence, that is, by utterances from which the jury may infer the existence of fear or revulsion. When an out-of-court statement is offered to prove circumstantially the declarant's state of mind, it is non-hearsay. It is admitted in evidence, not to prove the truth of the facts recited, but to prove that the utterance occurred as a basis for inference. McCormick On Evidence, § 228, p. 465 (1954); 6 Wigmore On Evi-

dence (3d ed.) § 1715, p. 60; 29 Am.Jur. 2d, Evidence, § 355, p. 404.

The victim's utterance immediately preceded his act in moving behind the tree. As phrased, the utterance does not appear to be a direct statement that the victim was afraid of the defendant. From it, however, the jury might well infer fear or revulsion. The utterance gives color to the victim's conduct in moving behind the tree. The utterance, as well as the non-verbal conduct, is circumstantial evidence of the victim's state of mind, or emotional attitude toward defendant. The testimony is non-hearsay and, because of its relevance, was admissible in evidence. See State v. Dunn, 161 La. 532, 109 So. 56; State v. Thomas, 159 La. 1076, 106 So. 570; State v. Morgan, 142 La. 755, 77 So. 588; Comment, Hearsay and Non-Hearsay as Reflected in Louisiana, Criminal Cases, 14 La.L.Rev. 611, 614.

Assuming arguendo, however, that the contested statement is hearsay, it would nonetheless be admissible in evidence under either of two exceptions to the hearsay rule. As a spontaneous declaration of apparent sincerity, it would be admissible under the "Declaration of Mental State" exception to the hearsay rule. See McCormick On Evidence, § 268, p. 567 (1954); 6 Wigmore On Evidence (3d ed.), § 1730, p. 93. It would likewise be admissible under the broad *res gestae* exception

as applied in Louisiana. See State v. Reese, 250 La. 151, 194 So.2d 729.

The need for this type of evidence in a homicide case is apparent. The victim is dead. In many instances, the jury must determine the facts from a mosaic of circumstantial evidence. This is true in the present case. We conclude that the statement was properly admitted in evidence.

BILL OF EXCEPTIONS NO. 10:
*Admission of Photographs in Evidence.*

Defendant objected to the admission in evidence of photographs of the charred body of the victim. He asserts they had no relevance to any contested factual issue and, because they were gruesome, tended to inflame the jury.

In State v. Morris, 245 La. 175, 157 So. 2d 728, we summarized the law relating to the admission of gruesome photographs as follows:

"[W]e have on numerous occasions stated that the mere fact that photographs are gruesome and tend to prejudice the jury does not render them inadmissible in evidence if they are otherwise admissible. See State v. Johnson, 198 La. 195, 3 So.2d 556, State v. Ross, 217 La. 837, 47 So.2d 559, State v. Solomon, 222 La. 269, 62 So.2d 481, State v. Eubanks, 240 La. 552, 124 So.2d 543, and State v. Collins, 242 La. 704, 138 So.2d 546. We think, however, that this rule is subject to the reservation noted in the vast majority of the common law jurisdictions and expressed in 23 C.J.S. 353, verbo Criminal Law § 852 (1)c: 'As a general rule, where photographs are otherwise properly admitted, it is not a valid objection to their admissibility that they tend to prejudice the jury. Ordinarily photographs are not inadmissible merely because they bring vividly to jurors the details of a shocking crime or tend to arouse passion or prejudice, as in the case of unpleasant, gruesome, or horrifying photographs. *The test of admissibility in such cases is whether the probative value of the photographs outweigh their probable prejudicial effect.* Accordingly, photographs should be excluded where there logical relevancy will unquestionably be overwhelmed by the inherently prejudicial nature of the particular picture; and photographs which are calculated to arouse the sympathies or prejudices of the jury are properly excluded if they are entirely irrelevant or *not substantially necessary* to show material facts or conditions.' "

The evidence in the present case was largely circumstantial. The contested factual issues included the identity of the body and the cause of death. The photographs, of course, were relevant to these factual issues and served as a pictorial foundation for the expert testimony.

Under all the circumstances, we conclude they were properly admitted.

### BILL OF EXCEPTION NO. 3A:
*State's Challenge of Juror for Cause.*

 The State was allowed to challenge for cause prospective juror Perot, when he declined to state that he would follow the court's instructions as to the law in arriving at a verdict.

The responses of the juror to both the trial judge and district attorney were unsatisfactory and raised serious doubts as to his qualifications as a juror. We are of the view that the trial judge correctly sustained the challenge.

 The defendant, moreover, has no cause for complaint, since the State did not exhaust its peremptory challenges.

Article 800 of the Louisiana Code of Criminal Procedure provides:

* * * * * *

"The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law."

The remaining Bills of Exceptions Nos. 4, 5, 6, 7, 8, 9, 10, 13, 16, 17, and 18 relate to the form of questions and correctness of procedures during the course of trial. We have reviewed them. None raises a serious question as to the fairness of the trial or the supportability of the conviction.

For the reasons assigned, the conviction and sentence are affirmed.

SUMMERS, J., concurs in the decree.

DIXON, Justice (concurring):

Although the record does not reflect that the error was prejudicial, there is no justification for the trial court's prohibiting the State's witnesses from discussing the case with defense counsel.

Louisiana does not provide for discovery devices in criminal cases. Neither does Louisiana prohibit the defendant, if he can and will, from interviewing witnesses for the prosecution. Article 764, Code of Criminal Procedure does not allow the judge to prevent the defense counsel from attempting to talk to the prosecution witnesses.

TATE, Justice (concurring).

I respectfully concur, but with reservations as to the rationale of the majority opinion in two respects.

The most serious issue of the appeal is presented by Bills of Exceptions Nos. 15 and 15a. These have to do with the witness Jackson testifying that, a few hours before his murder, the victim Quinn had told him he was hiding from the accused

Raymond because the latter would want to have abnormal sex relations with him.

It does not seem to me that the victim's declaration (why he hid behind the tree) is admissible under the rule permitting use of such declarations to prove intent for subsequent acts proved. McCormick on Evidence, Section 270 (1954). The lower court apparently admitted it on such basis, and we seem to affirm; although additionally justifying this as relevant proof of the victim's state of mind.

I ultimately agree, however, that the evidence of the out-of-court statement of the dead victim is admissible. Its admission was, of course, highly prejudicial to the accused (if innocent), but it is also relevant evidence (if reliable) in this homicide case based entirely upon circumstantial proof.

· The evidence as to the victim's statement was not offered to prove the truth of the immoral relationship but, rather, the fact that the victim was hiding from the accused just a few hours before he was murdered. Other evidence shows that, *prior* to the incident, the accused was trying to locate the victim and, a couple of hours *after* the incident, the accused found the victim and they rode off together. The victim was never seen alive again.

The victim's desire to avoid the accused immediately before he was seen with the accused, and just shortly before his murder, is admissible as a relevant fact under ·

a rule peculiar to homicide cases: Where the proof relied upon is entirely circumstantial, conduct or declarations of the decedent shortly before his killing may sometimes be admissible as tending to show immediately antecedent circumstances explanatory of the killing and tending to connect the accused with it. State v. Dunn, 161 La. 532, 109 So. 56 (1926) (syllabus 19); State v. Morgan, 142 La. 755, 77 So. 588 (1918); Wharton's Criminal Evidence, Section 191 (12th ed., 1955).

The question of the admissibility of this evidence is extremely close. There is other evidence establishing a close (but not necessarily immoral) relationship between the victim and the accused and further showing that the victim, when located by the accused an hour or so later, accepted the latter's invitation to get into the automobile in which they later rode off together. Reasonable minds may well differ whether the victim's hiding from the accused shortly before the murder, (or his saying that he was) is actually material or relevant to the issues of this prosecution. 14 La.L.Rev. 615 (1954).

Further, reasonable minds may also differ as to whether, in the light of the particular materiality and relevance of this evidence, the introduction of the victim's declaration to prove a fact (but not its content) might not nevertheless have been unduly prejudicial, in view of its debasing contents. So one might well conclude,

therefore, that the need for the use of this testimony was outweighed by the severe prejudice to the accused thereby to result. 14 La.L.Rev. 617–20 (1954).

Ultimately, I cannot say the trial court erred in admitting the evidence. There is circumstantial evidence connecting the accused with the victim's death (he was the last person seen alive with the boy; he threw away some pistol bullets next morning similar to that by which the boy was killed); but in my opinion the evidence relied upon must have had very great weight in the jury's determination that the defendant was guilty of manslaughter (a lesser crime, incidentally, than the capital offense of murder with which he was charged).

The basic evidence shows that the accused and the victim were close friends prior to the latter's killing. The accused called the victim as much as twice a day, and they were frequently together. On the Sunday of the murder, they and a third friend (a prosecution witness) had gone hunting together most of the daylight hours, without any antagonism apparent.

The testimony of Jackson that the victim hid from the accused later that Sunday evening is the only evidence in the record that there could be any discord between the two. In my opinion, this evidence is relevant as an immediately antecedent circumstance explanatory of the killing and tending to connect the accused with it.[1] The essential justification for its admission in a homicide case, where the mouth of the victim is stopped by death, is that the necessity for its use outweighs its prejudicial effect, in view of the gravity of the crime and the circumstance that by it the victim's own testimony is made unavailable.

The question before the jury, and the trial court so instructed it, was not the truth of the victim's statement, but whether he made it: The jury was not to determine whether the victim's statement was true, but only whether Jackson's testimony was truthful that the victim had made such a statement (indicating a desire to avoid the accused on the evening of his murder). For the reasons stated, I believe the testimony was relevant and admissible for this limited purpose.

With regard to Bill of Exception No. 3, I agree with Justice Dixon's view that La.Code Crim.P. Art. 764 does not authorize a trial court to instruct witnesses not to talk with defense counsel.

---

1. This testimony of the victim's out-of-court statement indicating an immoral relationship all too probably furnished an explicit basis for the jury's divining a motive for the slaying, otherwise merely intimated by the evidence: but I am cited to no authority by which the out-of-court statement of the decedent would be admissible for this purpose as hearsay to prove the truth of its content.

The code provision that the judge may instruct sequestered witnesses not to discuss "the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel", it seems to me, is designed to assure *both* the district attorney's and the defense counsel's access to all witnesses during the trial. Rather than justifying an order limiting the access of one counsel or the other to witnesses, the code article is designed to prohibit such an order as here issued, which might hamper the prosecution or the defense in the efficient presentation of its case.

However, since no prejudice from the order is shown or even alleged, the error committed is not reversible. La.Code Crim.P. Art. 921.

For the reasons assigned, I respectfully concur in the majority opinion.

BARHAM, Justice (dissenting).

Under Bills of Exception Nos. 15 and 15–A the majority has found that "several hours before the alleged homicide" the victim hid behind a tree as the defendant approached in his automobile. Over objection the witness who had testified to this fact was asked: "Why did he say he was hiding?" The answer of the witness was that the victim said he was hiding because the defendant would want to have homosexual relations with him. The majority has attempted to make this highly prejudicial and non-relevant testimony admissible by saying that the state of mind of the *defendant* was important as it either increased or decreased the likelihood of later contact between the victim and the defendant, and that the *victim's* fear of and emotional reaction to the defendant several hours before the crime was also relevant.

The majority first attempts to rationalize that the utterance here used to establish the states of mind is not hearsay. Hearsay has been defined as testimony in court or written evidence of a statement made out of court offered to show the truth of the matters asserted therein and thus resting for its value upon the credibility of the out-of-court declarant. McCormick, Evidence H.B. § 225, p. 460. Of course any statement by the victim attempting to establish the state of mind or intention of the defendant hours before the crime is pure, rank hearsay. The majority has reasoned, as to the state of mind of the victim, that the statement does not *stand for the truth*, that is, that the *accused feared or was revolted by the defendant*, but is only a basis for the *inference* that the *victim feared or was revolted by the defendant*. This is a distinction without a difference, and certainly a conclusion which trained legal minds would have difficulty in understanding, and more certainly is wholly beyond the realm of comprehension for the lay juror. The majority cites McCormick, op. cit. supra,

§ 228, but apparently fails to consider §§ 225 and 270 and the totality of the hearsay problem.

Foremost, I am of the opinion that evidence of the state of mind of the *victim* several hours before this alleged crime is *totally irrelevant and inadmissible*. I am further of the opinion that the utterance of the victim is hearsay if offered to show his state of mind (fear of and revulsion toward the defendant) or to establish his intent for future action or conduct related to the future action and conduct of the accused. McCormick states clearly that if the out-of-court statement of the victim is offered to show his state of mind or intention at the time of the utterance for further inferences that his mental state found outlet in later conduct, it is hearsay. He states that an utterance offered to show intent of a victim is plainly hearsay, "and it seems at least equally subject to the hearsay weaknesses if a further inference is to be built upon the inference that D's [the victim's] intent was what he said it was". McCormick, op. cit. supra, § 225. See discussion on hearsay, 14 La.L. Rev. 611.

A concurring opinion appears to contend that the victim's statement made hours before his demise may be admitted as tending to connect the accused with his death. It is important in relation to this to note that the victim's utterance here would not tend to establish a later meeting between him-

self and the defendant but rather an avoidance of such a meeting. Therefore the utterance offers nothing to connect the accused and the victim at the time of the alleged murder, but even if it did, the inclusion in the utterance of the defendant's intention to do another and present act, commit sodomy, would make it wholly inadmissible.

The majority alternatively suggests that if this utterance is hearsay, and I am convinced it is, it is admissible under the res gestae exception. The declaration here does not conform to res gestae requirements of R.S. 15:447 and R.S. 15:448. No connexity whatever is made, and certainly there is no continuity, between the utterance and the crime. Not only are they separated by time and place, but they are totally irrelevant one to the other. The majority then would apply another hearsay exception, that is, the "spontaneous declaration of apparent sincerity", to establish mental state by hearsay utterance. The majority cites Wigmore on Evidence (3rd ed.) § 1730, p. 93, for this proposition. That section sets forth another very, very limited hearsay exception dealing with the declaration of state of mind in particular circumstances. It is not authority for the admission of the spontaneous declaration as defined by Wigmore. His real bases for the exception of spontaneous exclamation from the hearsay rule are to be found in §§ 1747–1750. Wigmore states that the usual re-

quirement for showing the impossibility of obtaining the testimony of the person is not necessary when dealing with the true spontaneous exclamation as an exception, for such an utterance is admitted as the best evidence. The spontaneous exclamation or excited utterance has often been confused with res gestae. 29 La.L.Rev. 661; 1 Wharton's Criminal Evidence (Anderson's 12th ed.) §§ 279–284; McCormick, op. cit. supra, §§ 272, 274. All writers agree that hearsay spontaneous exclamations must arise from unusual, startling, threatening occurrences. The degree of excitement would be persuasive of the degree of reliability. There should be such physical shock or nervous excitement that the utterance is almost uncontrollable. I fail to find such circumstances surrounding the utterance here complained of. Moreover, there is total absence of connexity between the declaration and the proof for which it was admitted, and it was irrelevant to the accused's guilt or innocence of the crime charged.

To summarize, I believe the highly prejudicial recitation by a witness of the murder victim's utterance, removed in place and time from the crime, to the effect that the defendant wanted then to commit the criminal act of sodomy was totally irrelevant to the later act of murder. It does not in my opinion qualify as res gestae even in Louisiana, or as a spontaneous declaration or excited utterance. Wigmore, op. cit.

supra, §§ 1746 et seq.; McCormick, op. cit. supra, §§ 272–274.

R.S. 15:434 declares that hearsay evidence is inadmissible in criminal proceedings except as otherwise provided. Exceptions to the hearsay rule should be carefully scrutinized and generally should be based upon the use of the best evidence available. The prejudicial quality of the hearsay evidence should be weighed carefully against the necessity for making the exception to the hearsay rule and against its probative rule. Even if I could concede that the utterance here admitted was not hearsay—that is, not admitted for the truth of the facts related but admitted for other purposes—, I would be constrained to say that this utterance should not have been admitted, for the jury here was more likely to accept it as a true statement of the facts it contained than for any other limited purposes. I suggest that here the jury became so overwhelmed by the possibility that the defendant was a homosexual that any probative value the utterance could possibly have had for other purposes was erased. Such a highly prejudicial out-of-court utterance by the victim cannot in this case be balanced by any expediency justifying its admission. I reiterate: It was inadmissible for any purpose and under any rule of evidence. I therefore respectfully dissent.

Rehearing denied.

BARHAM, TATE and DIXON, JJ., are of the opinion that a rehearing should be granted.