282 So.2d 461 (1973)
STATE of Louisiana
v.
Tom GREEN.
No. 53359.
Supreme Court of Louisiana.
August 20, 1973.
Rehearing Denied September 24, 1973.
*463 Warren Hebert, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Special Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Defendant Tom Green was charged in a grand jury indictment with aggravated rape. La.R.S. 14:42. He was tried by a jury, convicted and sentenced to imprisonment for life. Five Bills of Exceptions were reserved during the trial. Four are relied upon in this appeal.

Bill No. 1
At the trial the prosecution was questioning Anthony James Banks concerning his whereabouts on the evening of the alleged crime. Banks testified he was at Howard Lang's house. When asked if he had seen Sylvester Carey that night, he replied that Carey came to Lang's house. The interrogation then continued:
Q. For what reason did he (Carey) come there, do you know?
A. Yes, sir.
Q. What?
A. He say Tom was getting into some troublethat lady, she had hollered, and he said that ....
Whereupon defense counsel objected that the question was hearsay. The prosecutor then disclosed that he sought by his questioning to prove the fact of the utterance, rather than the truthfulness of the matter; in effect, that the witness's utterance at Lang's house was part of the res gestae.
The objection was overruled.
Although not part of the bill, reference to other parts of the transcript provide a context for this interrogation. The testimony shows that Carey was nearby and witnessed Green's actions when he kicked down the door of the victim's dwelling, and proceeded to assault her. Carey then ran to the Lang house where the witness Banks testified he uttered the quoted statement to which defense counsel objected. According to Carey's testimony, five minutes elapsed from the time Carey saw Green kick in the door and assault the victim until he arrived in the presence of Banks and uttered the controverted words. This is, however, an improbable statement, for the distance traveled was only two *464 blocks and it would not require five minutes to negotiate the distance.
In his brief, defense counsel contends that the State's purpose in having Banks repeat Carey's statement was to corroborate testimony given by Carey earlier in the trial, testimony which had thereafter been discredited in certain particulars.
Assuming a five-minute time lapse between Carey's presence at the scene of the crime and the utterance, it is doubtful that the declarations can properly be regarded as "necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." La.R.S. 15:448. There is, however, authority which would seem to support the State's position. State v. Raymond, 258 La. 1, 245 So.2d 335 (1971); State v. Davis, 162 La. 500, 100 So. 733 (1927).
Nor are we entirely convinced that the utterance was elicited by the State solely for the purpose of proving the fact of the utterance and not the truth of the statement in order to bring it within an exception to the hearsay rule. In order to fall within this exception, the mere fact that the statement was made (by the person not under oath) must itself be a relevant and important fact. But, if the fact that the statement was made (by the person not under oath) would be of no importance except for the truth of the statement, it is not admissible. State v. Cole, 145 La. 900, 83 So. 184 (1919). Cf. State v. Raymond, supra.
Nevertheless, despite the State's apparent untenable position on these two issues, we find no error warranting reversal of the trial judge's ruling. After ruling on the defense objection, the witness Banks was cross-examined by defense counsel in an effort to have Banks elaborate upon and explain the content of Carey's declaration when they met. This dialogue occurred:
Defense counsel: "Q. Didn't you say that Sylvester (Carey) said that Tom (the accused Tom) didn't rape that woman?"
The witness Banks: "A. He told us before he (the accused, Green) can get a chance to do anything, that lady had hollered and Mr. J. C. had came outwhat that man name, Mr. Taylor,he had ran out and he (the accused, Green) had ran." (parentheses added).
A fair reading of this statement by Banks, explaining Carey's declaration, leads to the conclusion that Carey meant that the accused Green did not have a chance to consummate the act of intercourse, without which a charge of rape cannot be sustained. This explanation of the objected to declaration, elicited by defense counsel himself, elaborated upon and clarified the meaning of the objected to utterance. This explanation was clearly exculpatory favoring Green's defense.
Under these circumstances the questionable hearsay utterance was harmless. The trial judge's ruling, therefore, did not, in our opinion, after an examination of the record, result in a miscarriage of justice, nor was the ruling prejudicial to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. La.Code Crim.Proc. Art. 921.

Bill No. 2
Prior to trial a motion to suppress was filed on behalf of the defendant. The physical evidence sought to be suppressed were "all items of clothing, specifically including underwear, trousers and shoes, seized pursuant to this arrest ...." The motion alleged that the search resulting in the seizure was pursuant to an unlawful arrest in violation of the Fourth and Fourteenth Amendments of the United States Constitution.
Counsel for defendant stated during the trial that the motion was not heard prior *465 to trial, but was referred to the trial on the merits, ostensibly without objection. However, when the State sought to elicit from the police officer whether he had obtained any physical items from the accused, defense counsel objected, the jury was removed and the motion to suppress was reurged.
When questioned by the trial judge about what was seized, the police officer testified "... everything he had on, except a windbreaker jacket ....", the seizure having occurred at the courthouse after the accused was arrested and when he was changing into prison garb. The motion to suppress was denied.
Clearly, the clothing being worn by the accused were properly subject to seizure if the arrest was lawful. And, since there is no showing to the contrary, the arrest is presumed to be lawful. La. Code Crim.Proc. arts. 213, 225; State v. Wood, 262 La. 259, 263 So.2d 28 (1972); State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971).
On this appeal the defense argues that the windbreaker jacket was not being worn by the accused, but was in another room of his house at the time of his arrest. The argument is made, also, that the victim testified that her assailant was wearing a hood when she was attacked. The windbreaker jacket had such a hood, and defense counsel represents in brief that the prosecuting attorney made repeated reference to the hooded jacket which he kept in plain view of the jury during trial. Because the jacket was in another room, the defense argues, it was seized in violation of the rule of Chimel v. California, 395 U. S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
Aside from the fact that the windbreaker jacket was not mentioned as an item sought to be suppressed in the motion, and that it was never actually introduced in evidence, the defense did not present facts to substantiate its argument that the windbreaker jacket was seized pursuant to an unlawful arrest, either at the hearing on the motion, during trial or in brief. At no time during trial did the defense object to the introduction of the jacket on Chimel grounds, though there was apparently adequate opportunity to do so.
Even in brief the defense has failed to point out facts which would substantiate his Chimel-based objection. He simply states that the seizure took place in a room other than the room in which he was taken into custody and that the jacket was in a place beyond his control. No showing is made that the seizing officer was without a right to be in the room where the seizure was made, or that the seizure was made in a room other than the one in which he was arrested; nor does he establish that the jacket was not in "plain view". La.Code Crim.Proc. Art. 703, subd. C.
In fine, the defense has not made part of its bill any testimony, document or other evidence tending to establish the validity of its claim, nor does a review of the record disclose any. This bill has no merit.

Bill No. 3
Objection was made to the ruling of the trial judge on the voluntariness of the defendant's oral confession.
When evidence was received on the question, Bowman, the arresting officer, testified that the accused signed a Waiver of Rights form (Miranda warnings), which he and Deputy Comeaux witnessed, at which time the accused was orally advised of his rights. Prior thereto, the accused had been orally advised of his rights at his residence, the locale of the arrest. At the time of signing the Waiver Form it was read to the accused and he declared he understood it.
No threats, promises of rewards or immunity were offered at the time, according to the witnesses to the confession; and no undue influence was used.
*466 The defense contends, however, that at the time he allegedly made the confession, he did not have the capacity to waive his rights, and he did not do so knowingly and intelligently. To support this position reliance is had upon the accused's youth and his claimed intoxication at the time of the confession.
In its brief, the State contends that the question of intoxication and whether it is of such a degree as to invalidate a confession is a question of fact for the jury, citing State v. Manuel, 253 La. 195, 217 So.2d 369 (1969). While this statement of the law is correct, as far as it goes, it must be noted that before the question of intoxication becomes a jury question, the trial court must first determine that the intoxication was not so severe as to render the confession unfree or involuntary, and that no other factor vitiates the confession. As counsel for the defense points out, the burden is on the State to prove that a confession is free and voluntary.
This burden has been met. In addition to the arresting officer's testimony, summarized above, he testified on cross-examination in response to the question "Did he appear to be intoxicated?" as follows: "Not to where he couldn't comprehend. He had been drinking, it was obvious he had been drinking, but he hadn'tI mean, he wasn't bombed."
The defense presented testimony of the defendant to the effect that he could not read, was drunk at the time the confession was given, did not remember being advised of his rights, and did not want to give a confession. On cross-examination, the defendant admitted that the signature on the rights form was his, but that he did not remember signing it. The defense presented three other witnesses, young friends of the defendant and his brother, who all testified that the defendant was drunk earlier on the evening of the rape, but there was no testimony as to his condition at the time of the confession, a few hours later, other than that of the arresting officer.
It is submitted that the trial judge, who had the opportunity to hear first-hand the testimony of the witnesses and observe their demeanor, did not err in ruling the confession free, voluntary and admissible. Once the confession was admitted, the weight to be accorded it was a matter for the jury to decide. See State v. Manuel, supra, and State v. Alexander, 215 La. 245, 40 So.2d 232 (1949).
Regarding defendant's claim that his confession was not free and voluntary due to his youth, it is submitted that the State's witness gave credible testimony that the defendant understood his Miranda rights and that the defense has not established the defendant's alleged illiteracy or lack of capacity due to intoxication which would require invalidation of the oral confession. This Court, in earlier cases, has upheld rulings of admissiblity of youths' confessions. See State v. Vessel, 260 La. 301, 256 So.2d 96 (1971), and State v. Douglas, 256 La. 186, 235 So.2d 563 (1970). Moreover, the Court even ruled admissible as free and voluntary a confession made by an 18-year-old youth who was moderately retarded and had an I.Q. of approximately 59 in State v. Edwards, 257 La. 707, 243 So.2d 806 (1971). Bill No. 3 is without merit.

Bill No. 4
Counsel for the defendant does not discuss this bill of exceptions in his brief, and there was no oral argument on its merits. We must necessarily conclude that he has abandoned this bill of exceptions. See State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972) and the cases cited therein.

Bill No. 5
A motion for a new trial was filed by the defense urging: the improper admission *467 into evidence of defendant's oral confession and the ruling of admissibility by the trial court as to the hooded jacket seized by the arresting officer. These two grounds have been found to lack merit in Bills 2 and 3 discussed above.
The motion also urges that there were objectionable comments to the jury by the trial judge. When the jury reported it was divided in its opinion, the judge's comments were interpreted by defense counsel to mean that the judge coerced a verdict.
However, a reading of the colloquy between the trial judge and jury foreman satisfies us that this did not occur. We incorporate this part of the record in support of our position, viz.:
"BY THE COURT:
Q. Have you been able to reach a verdict, Mr. Foreman?
A. (Foreman) We have not, Your Honor. We seem to be permanently hung. All of us are convinced....
Q. Well, don't tell me what your verdict is. You are convinced you cannot reach a verdict?
A. (Foreman) Yes, sir.
Q. (Juror) At this point, sir.
A. At this point? Do you think further deliberation would help?
A. (Juror) The word "principal" seems to have a lot of weight.
Q. Do you want me to read the article again on principals?
A. (Juror) No. In layman's (Juror) talk ....
Q. I can't discuss the facts of the case with you, but if you have something that you want mean article or some part of the charge that you want me to go over, I will be glad to do it, but what you do in the juryroom, of course, is secret, and I don't want anyone to discuss anything that is going on in the juryroom, and I cannot discuss any facts at all in this case. If I did, it would be reversible error. We have spent two days with this trial. I do not like to seehave to try a case over, if I can avoid it, because of the time and expense, and so forth, of doing so. If you think there is any possibility at all that you can reach a verdict, I will let you go back in the juryroom and try longer. Yes, sir?
A. (Juror) Would it be possible for you to read the victim's statements again, that we may not understand?
Q. No, sir, you cannot go back over the testimony. That's why I asked you, when you were selected, to listen attentively, because I cannot repeat anything that was said from the witness stand. You have to be able to remember what was said and so forth. Do you think if you tried a little longer, you might be able to possibly reach some verdict? We will keep you well supplied with coffee and food and wateryes, sir?
A. (Juror) Is it possible to poll the jury?
Q. I beg pardon?
A. (Juror) Is it legal to poll the jury?
Q. I would rather not poll the jury.
A. (Juror) Sir?
Q. I would prefer not to poll the jury. I think they are cleaning out the table. That might make it a little nicer.
A. (Foreman) Your Honor, we do have a majority in one direction. The minority has stated that their minds cannot be changed at this point, and this is ....

*468 Q. Well, maybe you can work it by someoneeach one going over what he understands to be the facts, to try to see if there is a difference in interpretation of fact. If there is, maybe you could work it out, so that you would understand the interpretation or maybe the majority could convince somebody that what they thought they heard was not what they heard and so forth and so on. If you could go back over it and let each man speak on what he feels about the facts, that convinces him whichever way he is going, you might be able to work it out that way, because I think the lawI have read the statutes. If there are any of them that you need to have re-read, I will be happy to do it for you. If it's a factual matter you're hung up on, I can't help you in any way. I can just suggest that you rehash it, talk about it some more yes, sir?
A. (Juror) Is there any way the Court could comment, perhaps on past experience with juries, on how much conjecture, other than evidence, could influence people?
Q. Well, I think in my charge, I told you that you should consider all the sworn testimony and you may make reasonable inferences from that. I cannot comment at all on the facts, but in the charge, I told you that you can infer anything that is reasonable to infer from what evidence you heard.
THE COURT: See if they've got that thing cleared off. It's clear?
Q. Do you want to try it a little while longer?
A. (Foreman) Yes, sir.
THE COURT: All right, retire the jury. (Jury again retired to deliberate.)"
The situation reflected by the above fits the following statement in State v. Rodman, 208 La. 523, 23 So.2d 204 (1945):
"It is well settled that, when the court is informed by a jury that they cannot agree, it is not error for the court to impress upon them the importance of the case, urge them to come to an agreement, and send them back for further deliberation; for the question of the discharge of the jury because of inability to agree on a verdict is within the sound discretion of the trial court, and the exercise of such discretion is not ordinarily subject to review."
The fourth ground urged in the motion for a new trial relates to the allegation that a new trial should have been granted because the evidence received was questionable, and the victim could only identify Sylvester Carey, not the defendant, as the perpetrator of the crime.
It is well-settled that an allegation that a verdict is contrary to the evidence, and an attack upon the credibility of the witnesses and their evidence presents no question of law for this Court's review. State v. Grey, 257 La. 1070, 245 So.2d 178 (1971).
For the reasons assigned, the conviction and sentence are affirmed.
SANDERS, C. J., concurs in the decree.
DIXON, J., concurs.
BARHAM, Justice (concurring).
Bill of Exceptions No. 1 was reserved to prejudicial rank hearsay testimony. However, the party quoted by the witnesses took the stand and verified this hearsay. In my opinion this cured reversible error.