DIXON, Justice.
Lynn Wiggins and Gene Allen were working in the Oak Ridge Bank in Oak Ridge, Louisiana at noon on June 5, 1978 when a young black man entered the building and at gunpoint ordered Mrs. Wiggins to give him all the money in her teller drawer. Mrs. Wiggins complied with the *1156 robber’s request but also slipped a stack of marked bills and two disguised tear gas canisters into the brown paper sack supplied by the gunman. As soon as the robber left, Allen pressed an alarm which automatically notified the sheriff’s office in Bastrop of the robbery. He then went outside to tell others about the robbery and to discover whether anyone had seen the robber’s escape.
News of the crime quickly reached the local cafe where William McDuffie was eating lunch. Only moments earlier McDuffie (who knew nearly everyone and his car in Oak Ridge) had seen a strange cream colored 1978 Thunderbird on a parking lot and had been writing down its license plate number when he saw a young black man get into the car and drive off quickly. McDuffie told this information to Jeff McCain, who then telephoned the More-house Parish sheriff’s department and gave a description of the car and its plate number.
In the meantime, Deputy Lyle Hopkins left Bastrop to investigate the robbery. Driving south on Highway 139, he first stopped at Bankston’s Grocery to see if the owner had noticed the car in question. He then drove south into Ouachita Parish but quickly turned around to follow a cream colored 1978 Thunderbird traveling in the opposite direction.[1] Hopkins contacted the radio dispatcher in Bastrop and learned that the plate numbers matched for the suspected getaway vehicle and this car. The Thunderbird pulled over at Bankston’s Grocery and Hopkins arrested its occupants, Jimmy C. Johnson and Frederick Wilson. While Mr. Bankston held the two at gunpoint outside the automobile, Hopkins obtained a key to the locked glove compartment and discovered a .22 caliber pistol inside. A subsequent search of the Thunderbird unearthed two small round disks which resembled parts of a tear gas canister. Sheriff’s officers subsequently found a brown paper sack containing the money in a ditch beside a nearby country road.
After support units arrived, Johnson and Wilson were taken to the Oak Ridge Bank where Allen identified Johnson as the robber. The two men were then transported to Bastrop and were booked with armed robbery at the parish jail. Johnson’s clothes were taken from him, and five .22 caliber bullets were found in the right front pocket of his trousers. On the following day both men gave statements to the police.
Johnson and Wilson were thereafter charged by bill of information with armed robbery, a violation of R.S. 14:64. A motion to suppress the statements and certain items of physical evidence was heard on September 18, 1978. The trial judge suppressed the pistol and metal disks seized from the automobile but otherwise denied the motion. Thereafter the State obtained a severance and brought Johnson to trial alone on September 26, 1978. He was convicted as charged and was subsequently sentenced to eighteen years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals his conviction and sentence, placing reliance on five of seven assignments of error filed below.

Assignment of Error No. 1

In this assignment of error, the defendant contends that the trial judge was in error to deny the defense motion to suppress the confession. The defense argues that the statement was not freely and voluntarily made because the prosecution failed to make a sufficient showing that Johnson was advised of his rights and understood their meaning.
Deputy Hopkins testified at the suppression hearing that he read Johnson and Wilson their Miranda rights when he arrested them. His testimony on this point was corroborated by Mr. Bankston, who stated at trial that he had heard the deputy inform the suspects of their rights. Hopkins also testified that he repeated the rights to *1157 Johnson on the following day and gave him a copy of the waiver form so that he could follow along as his rights were read to him. As the deputy began to record the statement, Johnson asked about the meaning of one phrase on the waiver form:
“Q Have I read these rights to you?
A Yes.
Q Do you understand these rights?
A No.
Q What is it that you don’t understand?
A Like what I say can be used as evidence, the rights, what I saw can and will be used against me.
Q That’s correct, that’s what it says right there on that waiver.
A If I say something to you right now, that goes down in Court?
Q Everything that you say will be recorded and can be presented in the Court of Law on charges pending against you. That’s correct.
A I’ll have one charge?
Q That’s all.
A That’s armed robbery, right?
Q That’s armed robbery. Any other questions?
A Go ahead.”
The prosecution also introduced a waiver form signed by the defendant.[2]
The State has the burden of affirmatively proving that a confession was made freely and voluntarily and not as a result of fear, duress, intimidation, menaces, threats, inducements, or promises. R.S. 15:451; State v. Weinberg, 364 So.2d 964 (La.1978); State v. Hollingsworth, 337 So.2d 461 (La.1976). Moreover, if a defendant confesses during a period of custodial interrogation, the prosecution must establish that he was first advised of his Miranda rights. State v. Rankin, 357 So.2d 803 (La.1978); State v. Hutto, 349 So.2d 318 (La.1977).
In the instant case the prosecution introduced evidence that Miranda warnings were given and demonstrated that Johnson understood the meaning of the rights read to him. In addition the prosecution introduced the waiver form signed by the defendant. On the other hand, the defendant did not testify at the suppression hearing and therefore raised no specific allegations of coercion or promises which the prosecution was required to rebut specifically. See State v. Hills, 354 So.2d 186 (La.1977). In light of these considerations, the trial court was correct to deny the defense motion to suppress the confession.
This assignment of error is without merit.

Assignments of Error Nos. 2, 3 and 6

By these assignments of error, the defense contends that the trial judge was in error to deny the motion to suppress certain items of physical evidence. The defense bases these allegations on the argument that the arresting officer did not have probable cause to stop the defendant’s automobile and to arrest him. In the alternative the defense contends that certain prosecution exhibits were inadmissible because they had no connection with the defendant and were therefore highly prejudicial.
As we said in State v. Johnson, 363 So.2d 684, 689 (La.1978): “. . . When a crime has been committed and the police know it, they only have to determine whether there is reasonably trustworthy information to justify a man of ordinary caution in believing the person to be arrested has committed the crime. . . . ”
The arresting officer had a radio report from his dispatcher that the suspects were two young black men in a 1978 cream colored Thunderbird, who were seen leaving Oak Ridge immediately after the robbery. The officer noted the license number of the Thunderbird, radioed his dispatcher, and the number matched that of the suspected vehicle. There was probable cause to arrest.
*1158 With respect to the items that the defense contends were erroneously admitted in evidence, the record establishes that only the defendant’s clothes and the five .22 caliber bullets found in his pocket were the objects of a search and seizure. These items were properly admitted; securing of the arrested person’s property during booking is a reasonable incident to the arrest. State v. Taylor, 347 So.2d 172 (La.1977); State v. Green, 282 So.2d 461 (La.1973), cert. denied, 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1973). The other items of evidence either had been abandoned, such as the paper sack containing the stolen money (see State v. Washington, 364 So.2d 949 (La.1978)) or were never subject to the defendant’s control, such as the list of the stolen bills’ serial numbers which the bank supplied to the prosecution.
The defense has also alleged that the items admitted in evidence were unconnected to the defendant and were therefore highly prejudicial. However, our jurisprudence is clear that demonstrative evidence is admissible if the foundation laid establishes that it is probably connected with the case. State v. Demouchet, 353 So.2d 1025 (La.1977); State v. McMorris, 343 So.2d 1011 (La.1977). In the instant case the record reveals that this standard was followed by the trial court.
These assignments lack merit.

Assignment of Error No. 4

By this assignment the defense argues that the trial court erred by allowing witnesses to testify concerning the pistol seized from the automobile, since it was excluded from evidence at the suppression hearing. The testimony to which the defense assigns error was given by the bank employees, who both stated that they had seen the robber armed with a gun.
In State v. Marshall, 359 So.2d 78 (La.1978), this court held that the “fruit of the poisonous tree” doctrine required the exclusion of evidence obtained from an unlawful search and seizure, but did not prevent introduction of testimony which referred, at a time before any illegal seizure, to evidence which had been suppressed because of a subsequent illegality. The defense states no reason why the policies underlying the exclusionary rule and the “fruit of the poisonous tree” doctrine would be advanced by forbidding the victims of the armed robbery to testify that they saw a pistol in Johnson’s hand at a time before the unconstitutional search and seizure.
This assignment lacks merit.
For the reasons assigned, the conviction and sentence are affirmed.

. The defense contends that the automobile was headed south on Highway 139, but this argument is not supported by the record.

. The defense argues that the confession is invalid because it is unclear whether the defendant signed the form which Hopkins read or the form which Hopkins handed him to read along while his rights were read to him. However, the objection is meritless, since it is clear from the record that the forms were identical.