337 So.2d 1087 (1976)
STATE of Louisiana
v.
Byron SCOTT.
No. 57630.
Supreme Court of Louisiana.
September 13, 1976.
Rehearing Denied October 13, 1976.
*1088 Robert Zibilich, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant was convicted of second degree murder, a violation of R.S. 14:30.1, and was sentenced to life at hard labor.
On May 10, 1974 defendant was arrested for driving without a license and reckless driving. He was booked and allowed to use the telephone. During this phone call an officer overheard him tell the other party to ". . . tell my maw and paw if they don't get me out of here, I'm going to blow them away." Later that evening the defendant was released on bail.
On May 11, 1974 defendant went to his father's residence at the Desire Street project in New Orleans. He was armed with a shotgun. Outside the apartments he told one of the neighbors he was going upstairs "by his mama," and, he said, "if you hear anything go pow, you'll know what happened."
Defendant went up to his parents' apartment and asked his mother where he could find his father. She responded that he was asleep in the bedroom. Defendant entered the bedroom and aimed his gun at his father. Defendant's mother then put herself over her husband and told the defendant not to shoot. This awakened the father and he said, "Boy, what's the matter with you?" Defendant then fired a single shot, killing his father. As his mother screamed, defendant turned to her and told her she would "get the same thing" if she did not become quiet.
Defendant left the apartment, dropping his gun on the stairway leading to his parents' apartment. His mother came out behind him telling one of the neighbors to call the police because "Tony [defendant] had killed Johnny [defendant's father]." The neighbor ran up to the victim's apartment and saw him lying on the bed with a "hole in his chest." She called the police.
When they arrived, the police officers could find no vital signs in the father. They searched the apartment and found no weapons.
In defendant's sole assignment of error he contends the trial court erred when, over his objection, it admitted photographs of the deceased's body as it was found in the apartment.
The photographs are black and white representations of the victim's body. They portray the victim lying across the bed in which he was shot. His body and the bed are covered with blood, and protruding from his chest is a portion of an organ or muscle.
The pictures are gruesome and material to no disputed issue in the case. However, the record contains ample uncontradicted evidence of the defendant's guilt. Records in other cases demonstrate that it has become a common practice to present gruesome photos containing minimal probative value to the jury. If there really is a rule of law in Louisiana requiring the balancing of probative value against possible prejudicial effect, new trials should be ordered in cases like this one. This court, however, has declined to follow this course so often that prosecutors may be justified in the belief that, if it can be argued that the pictures are at all relevant, this court will not order a new trial when gruesome pictures are introduced.
The much cited rule governing the admissibility of gruesome pictures requires a determination of whether the probative value of the pictures outweighs their probable prejudicial effect on the jury. See, e.g., State v. Curry, 292 So.2d 212 (La.1974). Stated differently, this court has approved the proposition that:
". . . photographs which are calculated to arouse the sympathies or prejudices of the jury are properly excluded if *1089 they are entirely irrelevant or not substantially necessary to show material facts or conditions." State v. Alexander, 252 La. 564, 573, 211 So.2d 650, 653 (1968).
Notwithstanding this language, this court has only twice applied this test to find that reversible error was committed in the admission of this type of photographic evidence.[1]
The test of balancing the probative value of the photographs against their probable prejudicial effect has not only been announced in the Louisiana jurisprudence but has also been approved by the commentators. See, e.g. 1 Underhill's Criminal Evidence § 117 (6th ed. P. Herrick, Supp.1976), Pugh, Work of the Louisiana Supreme Court 1952-1953 Term, Evidence, 14 La.L. Rev. 220, 223 (1953). It is noted that "relevance" is not the test, for a photograph of a murder victim is usually "relevant" at the trial of the alleged perpetrator. It is whether the probative value of the photograph is outweighed by the danger that its introduction may "unduly arouse the jury's emotions of prejudice, hostility or sympathy." McCormick on Evidence § 185 (Cleary ed. 1972). Therefore, in situations where the state has already made out its case and the photographs are merely cumulative in nature and are not "substantially necessary to show material facts or conditions" the probability is high that the probative value of these pictures will be outweighed by their prejudicial effect.
As a practical matter though, the introduction of these photographs is routinely upheld if any probative value or relevance is demonstrated by the state. See, e.g., State v. Cooper, 334 So.2d 211 (La.1976); State v. Chase, 329 So.2d 434 (La.1976); State v. Smith, 327 So.2d 355 (La.1976); State v. Nix, 327 So.2d 301, 334-335 (La. 1975), State v. Larue, 324 So.2d 384 (La. 1975); State v. Zeno, 322 So.2d 136 (La. 1975); State v. Beach, 320 So.2d 142 (La. 1975); State v. Ivy, 307 So.2d 587 (La.1975); State v. Normand, 298 So.2d 823 (La.1974), cert. den., 420 U.S. 908, 95 S.Ct. 827, 42 L.Ed.2d 838 (1975); State v. Chavers, 294 So.2d 489 (La.1974), cert. den., 419 U.S. 1111, 95 S.Ct. 786, 42 L.Ed.2d 808 (1975); State v. Bray, 292 So.2d 697 (La.1974); State v. Curry, 292 So.2d 212 (La.1974); State v. Fallon, 290 So.2d 273 (La.1974).[2] Therefore, prosecutors are reinforced in their opinion that on review this court does not apply the test for admissibility of gruesome photographs, as traditionally stated, but rather asks simply whether the photographs were so outrageous as to necessitate that a new trial be conducted without them. We find no such necessity in the case before us.
Accordingly, defendant's conviction and sentence are affirmed.
SANDERS, C.J., and MARCUS and DENNIS, JJ., concur.
CALOGERO, J., concurs and assigns reasons.
CALOGERO, Justice (concurring).
I concur in the affirmance of defendant Scott's conviction because I believe that the photographs at issue were admissible evidence. Their probative value (to identify the victim, and to reveal the manner in *1090 which death occurred) outweighs their possible prejudicial effect.
Otherwise, the language of the opinion does not express my views.
NOTES
[1] State v. Morris, 245 La. 175, 157 So.2d 728 (1963) (reversible error to admit gruesome color photographs taken during the autopsy of the victim where the cause of death had already been established and the only remaining issue was whether the homicide was committed intentionally); State v. Morgan, 211 La. 572, 30 So.2d 434 (1947) (reversible error to admit gruesome photographs of the body of the victim for purposes of proving the corpus delicti, nature, scope and extent of the would, when the corpus delicti had already been proven by the coroner's testimony and the introduction of the proces verbal of the coroner's inquest, and the nature, scope and extent of the wounds had been described by the coroner and there was no dispute as to these subjects at the time of the introduction of the photographs).
[2] But see State v. Gilmore, 332 So.2d 789, 796 (La.1976), for the proposition that the trial judge should make the determination whether a stipulation as to the identity of the victim could prevent the admission of a photograph of the deceased into evidence, when that picture is being offered to prove the identity of the victim.