381 So.2d 424 (1980)
STATE of Louisiana
v.
Dave ALBERT.
No. 65765.
Supreme Court of Louisiana.
March 3, 1980.
Rehearing Denied April 7, 1980.
*425 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Sturgeon, Dist. Atty., Glenn B. Gremillion, Asst. Dist. Atty., for plaintiff-appellee.
J. Michael Small, Alexandria, for defendant-appellant.
*426 WATSON, Justice.[*]
James E. "Tobe" Roberts, Johnny Lawrence, and Dave Albert were indicted for the first degree murder of Tobe's wife, Barbara Roberts, in violation of LSA-R.S. 14:30. The State accepted a plea of guilty to second degree murder by Lawrence. A severance was granted between Roberts and Albert, and separate indictments were filed. In the first trial of Dave Albert, a mistrial was ordered. In this second jury trial, defendant Albert was found guilty as charged. At the hearing on sentencing, the jury was unable to agree on a verdict, and Albert was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. LSA-C.Cr.P. art. 905.8. The appeal relies on twenty of twenty-three assignments of error.[1]
FACTS:
At approximately 8:00 A.M. on July 27, 1977, Barbara Roberts was murdered at her home in Vidalia, Louisiana. She and her husband were legally separated. Tobe Roberts had beaten his wife severely before abandoning the family home and was living with a girl friend, Sherry Freeman. He suspected his wife of a romantic involvement with Eddie Housley. He had armed Albert and Lawrence, employees in his farm operations, and directed them to watch his wife. On July 23, 1977, Roberts left for a Florida vacation accompanied by the couple's two teenaged children and Sherry Freeman. Barbara Roberts did not stay in her home at night while the children were gone because of fear. She visited with her sisters, Doris Sutherland; Charlotte Jenkins; and Bobbie Walden. The night before the murder, Barbara was at the Walden home. She left at 7:40 A.M. intending to feed the pet rabbit of her daughter Tammy on the way to work. While inside the house on this errand, she was choked, hit and fatally wounded by a bullet in her right temple. The State's theory is that Tobe Roberts hired Albert and Lawrence to commit the murder.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in denying his motion to quash on the ground of double jeopardy.
After jury selection was complete in Albert's first trial, the State called Johnny Lawrence. On direct examination, Lawrence testified that Albert shot Barbara Roberts and then ran into the barn and told Lawrence what he had done. The two fled, abandoning their guns in a ditch. They hitchhiked to the home of Albert's sister, where they changed clothes. After describing these events, Lawrence said he had been threatened in jail by unidentified people and was frightened. Despite a defense objection, the court allowed Lawrence to invoke the Fifth Amendment. The next day, when Lawrence again took the stand and stated that he was afraid he would be killed if he said anymore, the court advised that he would be protected and could not refuse to testify on that basis. The court denied Lawrence the protection of the Fifth Amendment, because he feared retaliation rather than self-incrimination. Lawrence was held in contempt of court for his silence and confined to Parish Prison. A motion for mistrial by counsel for Albert was granted.
Defendant claims that this second trial places him twice in jeopardy for the same offense.
LSA-C.Cr.P. art. 591 provides:
"No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant."
The mistrial was granted at the request of defense counsel, but it is argued that the *427 motion was not voluntary, because the only alternative was to proceed without the constitutional right of confronting Lawrence on cross-examination. It is also contended that the mistrial was not legally ordered under C.Cr.P. art. 775:
"A mistrial may be ordered, and in a jury case the jury dismissed, when:
"(1) The defendant consents thereto;
"(2) The jury is unable to agree upon a verdict;
"(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
"(4) The court finds that the defendant does not have the mental capacity to proceed;
"(5) It is physically impossible to proceed with the trial in conformity with law; or
"(6) False statements of a juror on voir dire prevent a fair trial.
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771."
The trial court's second ruling that Lawrence could not invoke the Fifth Amendment was correct. The witness had a real or imaginary fear which was unrelated to self-incrimination. See State v. Jones, 363 So.2d 455 (La., 1978). Even if his motive had been to avoid self-incrimination, his testimony on direct examination waived his Fifth Amendment privilege as to the substance of that testimony. Compare State v. Bolen, 338 So.2d 97 (La., 1976) which involved cross-examination about matters not covered on direct. The court was aware of the prejudice to defendant which resulted from the refusal of further testimony and stated: "Johnny, you got all this started, you're in the middle of it now, we're gonna have to stop the whole trial." (Tr. 5, December 1, 1977, testimony).
Even granting that defendant's motion for a mistrial did not amount to "consent of the defendant" under LSA-C.Cr.P. art. 591, the mistrial was legally ordered under LSA-C.Cr.P. art. 775. Lawrence's refusal to testify constituted a "legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law."
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant contends that the trial court erred in not granting a change of venue, based on the Concordia Parish news coverage of the murder, the mistrial, the trial of co-defendant Roberts and the guilty plea of co-defendant Lawrence. The trial judge took the motion under advisement until the completion of voir dire and then denied the motion.
LSA-C.Cr.P. art. 622 provides:
"A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
"In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."
At the time of the murder, there were various newspaper reports. The voir dire of these prospective jurors began almost a year later. Although most of the jurors had heard or read something about the case, many of them said it had been in the past when the murder first occurred. See State v. Bell, 315 So.2d 307, 317 (La., 1975). Only nine of sixty-two prospective jurors indicated that they had fixed opinions about the matter.
One article referred to Barbara Roberts' slaying as one of three sensational murders which took place in the parish during the prior year. It quoted Sheriff Fred *428 Schiele as saying it was merely an unfortunate coincidence that two local people had been the victims of murder during a relatively short period. No details of the Roberts' murder were recounted. Another article described the discovery of a pistol believed to have been used in the murder and said that Albert and Lawrence had been arrested as material witnesses. A subsequent account states that the grand jury had indicted Roberts for first degree murder, Albert for first degree murder, and Lawrence as an accessory after the fact. The articles are factual and not inflammatory. In an interview with Albert's defense attorney, he is quoted as admitting that most of the publicity centered around the victim's husband rather than Albert, which is the case. There are no details in any of the articles which point to Albert's guilt, or tend to create prejudice against him. Defendant did not prove that a fair trial was impossible because of prejudice in the community. State v. Bell, 346 So.2d 1090 (La., 1977).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant contends that a mistrial should have been granted because the District Attorney in the course of his preliminary statement to the prospective jurors prejudiced the defendant by referring to other trials. While explaining the purpose of the voir dire examination, the District Attorney said:
"The second thing we'll be going into is the matter of whether or not there should be a change of venue. That is, whether or not, since this case, we all know, this is not, this will be the second or third trial involving the particular incidents involving Mrs. Roberts, that...." (Tr. 0453)
Defendant contends that Louisiana C.Cr.P. art. 857[2] requires that the jury be unaware defendant has previously been tried. See State v. Reed, 324 So.2d 373 (La., 1976). Here, unlike State v. Lee, 346 So.2d 682 (La., 1977), the remark did not pin-point defendant as being involved in the previous trials and there was no reference to a conviction. The prosecutor's vague remark was relevant to the change of venue question and was probably interpreted by the prospective jury members as referring to the trials of the co-defendants. The trial court correctly concluded that any prejudice which may have resulted was not sufficient to prevent a fair trial. Denial of the mistrial was not an abuse of discretion.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER SIX
This assignment of error relates to prospective juror Charles King. The defense used a peremptory challenge on King and contends that he should have been excused for cause because of a preconceived idea about the case. All of defendant's peremptory challenges were exhausted.
King testified that he had read about Barbara Roberts' death, but had heard very little discussion about the matter. He said he had formed an impression about the case but stated, "I'm totally free of any fixed opinion." (Tr. 0478) In essence, King said he had an open mind and could give the defendant a fair trial solely on the basis of the evidence presented in court. The trial court did not abuse its discretion in refusing to excuse him for cause. LSA-C.Cr.P. art. 797(2); State v. Sheppard, 350 So.2d 615 (La., 1977).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
The defendant contends that the trial court abused its discretion in excusing prospective black juror Lee A. McCoy, Jr., for cause. Prior to the voir dire, McCoy *429 told the court he had known defendant Albert for many years and had graduated with him from high school. McCoy said on voir dire that he would prefer not to judge the case of his close personal friend, and the court excused him. The court acted properly. LSA-C.Cr.P. art. 797(3). Moreover, even if juror McCoy should not have been excused for cause, there was no prejudice to the defendant because the State exercised only six of its twelve peremptory challenges. LSA-C.Cr.P. art. 800; State v. Labostrie, 358 So.2d 1243 (La., 1978).

ASSIGNMENT OF ERROR NUMBER EIGHT
Defendant contends that a mistrial should have been granted because prospective juror Charles Harbor volunteered that he had been a prospective juror: "On the same case once before." (Tr. 0542) No request was made that the jury be admonished to ignore or disregard the comment. The unsolicited remark did not specifically refer to defendant Albert and could have been construed to refer to grand jury proceedings or the Roberts' trial. The trial court concluded that the remark did not prevent a fair trial. There was no abuse of discretion.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TEN
Defendant complains that the State should not have been allowed to use a peremptory challenge to excuse a prospective black juror, emphasizing that defendant Albert is black and victim Barbara Roberts was white. Counsel for defendant concedes in brief that there has been no showing of systematic exclusion of blacks from petit juries in Concordia Parish over a period of time, but points out that blacks were absent from this particular jury.
Without a showing of systematic exclusion of blacks over a period of time, the State is entitled to exercise its peremptory challenges as it chooses. State v. Brown, 371 So.2d 751 (La., 1979); State v. Washington, 375 So.2d 1162 (La., 1979); State v. Roosevelt Allen, 380 So.2d 28 (La., 1980). Further Mrs. Washington was in an advanced stage of pregnancy and a former co-worker with defendant Albert's two sisters.
There is no merit to this assignment.

ASSIGNMENT OF ERROR NUMBER ELEVEN
Defendant contends that the trial court erred in allowing hearsay testimony by Bobbie Walden about Barbara Roberts' state of mind on the night prior to her death. Bobbie Walden intermingled her description of the victim's physical state with references to remarks she had made. The jury was admonished to disregard Bobbie Walden's statement that Barbara Roberts said she was afraid her husband was going to kill her. The hearsay statement would have been highly prejudicial if husband Tobe Roberts had been on trial. In Albert's case, the prejudice was less and the remark may have been admissible to explain "the immediately antecedent circumstances of the murder." State v. Weedon, 342 So.2d 642 at 647 (La., 1977). Any error was cured by the judge's admonition. LSA-C.Cr.P. art. 771.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWELVE
Defendant contends that the victim's sister, Doris Sutherland, should not have been allowed to testify about Tobe's physical abuse of Barbara, his extramarital pursuits and his paranoia about imaginary relationships on the part of his wife. Since a conspiracy between Tobe Roberts, David Albert, and Johnny Lawrence was established, infra, the evidence of Tobe Roberts' animosity and ill-treatment of his wife was admissible to show the motive behind the conspiracy.
This assignment of error lacks merit.

*430 ASSIGNMENT OF ERROR NUMBER THIRTEEN
Defendant contends that a mistrial should have been granted when a recorded statement was played in which Albert was asked by Deputy Paul Scott if he knew his rights, and he answered that he did. After an objection that the taped statement constituted an indirect reference to other crimes, the jury was told they could consider other offenses only to prove motive or intent. Counsel for defendant contended that the admonition was prejudicial because there was no evidence of other crimes.
The question posed to defendant on the tape was not by a court official and thus not within the purview of LSA-C.Cr.P. art. 770; State v. Foote, 379 So.2d 1058 (La., 1980). Moreover, it does not refer to other crimes. It was not prejudicial. LSA-C.Cr.P. art. 771. Defendant cannot complain about the effect of the admonition, because it was provoked by his objection. Compare State v. Ross, 320 So.2d 177 (La., 1975).

ASSIGNMENTS OR ERROR NUMBERS FOURTEEN, FIFTEEN, SIXTEEN, SEVENTEEN, EIGHTEEN, AND NINETEEN
These assignments of error relate to the question of whether the State established a prima facie case of conspiracy, as required by LSA-R.S. 15:455.[3]
The State proceeded on the theory that Tobe Roberts hired Johnny Lawrence and Dave Albert to murder his wife while providing himself with an alibi trip to Florida. The trial court correctly concluded that the State proved a prima facie case of a murder conspiracy.
Massive evidence, both direct and circumstantial, was adduced before the trial court ruled that a prima facie case of conspiracy had been established. State v. Kaufman, 331 So.2d 16 (La., 1976). Defendant Albert was charged only with murder and not with conspiracy to murder but the conspiracy aspect was essential to show the motive for the crime.
The evidence showing the conspiracy was cumulative and must be considered as a whole. Bobbie Walden, a close friend of the deceased, testified that Barbara Roberts exhibited a nervous and frightened state of mind prior to her death, looking exhausted and terrible. She had been at her home only a few minutes on the morning when she was killed. Her car was still running outside the door with her purse on the seat. According to the investigation of Deputy Roberts, the murder was not committed in the course of a burglary. The medical testimony was that there was no evidence of sexual assault, thus eliminating another common motive for violent crime.
Lawrence assisted police officers in recovering a pair of blue jeans with Tobe Roberts' name written inside, a glove which was a mate to one found at the murder scene, and other clothing identified by Lawrence as being that worn by him and Albert when the crime was committed.
Albert, on August 2, 1977, admitted that he had watched Barbara Roberts at her home on many nights at the instructions of her husband and was often armed on these occasions. A .357 magnum pistol was found in the Vidalia canal at a location pointed out by Johnny Lawrence. It was stipulated that the .38 caliber bullet found near Barbara's body on the morning of her death was fired from that pistol. Charlotte Jenkins testified to an occasion when Barbara Roberts was so badly injured that Charlotte spent the night with her in the hospital. Barbara Roberts appeared frightened and terrified. At approximately 4:00 A.M., Tobe Roberts came in the room with a pistol pointed in his hand. Approximately a *431 month before the Roberts separated, Charlotte Jenkins went to the home and saw Dave Albert squatting in a semi-hidden condition inside. He appeared to be hiding from her. James Sweeny, a neighbor of the Roberts, testified that he saw Tobe Roberts and a black man running out of the Roberts' home early one morning in April of 1977. Roberts had a gun in his hand and the two appeared to be searching for someone. Sweeny could not identify the black man with Tobe Roberts because his attention was focused on the gun.
Attorney Lloyd Love testified that Barbara Roberts had asked him to proceed with a divorce in July, the month of her death. A property settlement proposed by her husband was rejected as insufficient on July 22, 1977, the last date on which a divorce could be obtained before the summer court recess.
Trooper John Patrick of the Louisiana State Police testified that he examined Tobe Roberts' bank account and ascertained that Roberts paid Dave Albert checks totaling $1,890 for "labor" between April 30, 1977, and August 7, 1977. Roberts' account also showed a cash withdrawal of $6,000 on July 22, 1977, and a cash deposit of $4,000 on August 2, 1977, the first being approximately five days prior to the murder and the second approximately five days afterward.
Walter Davis, III, testified that he leased 1,100 acres to Tobe Roberts and had traded Roberts a .357 magnum pistol in exchange for a Winchester rifle on April 16, 1974. He identified the serial number on that gun as 4K9125, the number on the gun found in the Vidalia canal. Davis also testified that he observed that gun or a similar one in Dave Albert's truck in April of 1977. He observed Dave Albert and Johnny Lawrence together on Sunday, July 24, preceding the murder on July 27.
Eddie Housley testified that he had not had any improper relationship with Barbara Roberts prior to her death.
Wayne Roberts testified that he had seen a weapon similar to the murder weapon in Dave Albert's truck prior to the murder.
Jesse White, Jr., testified that, about a week after the murder, Albert asked White to go with him to search for a rifle he said he had lost in the Vidalia canal.
Dorothy Richardson testified that two men, one of whom she recognized as Dave Albert, caught a ride with her on the day of the murder. Both were wet and muddy and claimed that they were fleeing from a game warden. She subsequently learned that the other man was Johnny Lawrence. There was testimony that there were no game wardens on duty that day anywhere in the area.
Tammy Roberts testified that Albert was regarded as a member of her family. Both he and Lawrence were armed and on guard at the Roberts' home prior to her mother's death. On one occasion, Dave Albert was inside the house and "jumped out" (Tr. 1147) at her with a gun in his hand when she came home from school. She identified the blue jeans with her father's name inside as similar to those worn by her father and given to Albert.
Sherry Freeman said she first met Albert early in 1977 at the Roberts' residence about 5:00 A.M. He was in a truck with a shotgun leaning out of the window. On the Saturday of the Florida departure she observed Roberts exhibit a wallet containing about $10,000 to Albert and Lawrence. Roberts then gave Albert "something" (Tr. 1163). At this point, the trial court ruled, out of the jury's presence, that the State had established a prima facie case of conspiracy. Sherry Freeman was then allowed to testify that:
"Tobe said, `We won't have to worry about her when we get back, she'll be gone'."
There was overwhelming evidence of a conspiracy. See State v. Sheppard, 350 So.2d 615 (La., 1977); State v. Bell, 346 So.2d 1090 (La., 1977).
These assignments of error are without merit.

ASSIGNMENTS OF ERROR NUMBER TWENTY AND TWENTY-ONE
These assignments of error relate to the testimony of Walter Kelly, II, who *432 was incarcerated with Tobe Roberts. Kelly testified that he was paid by Roberts to copy three letters which were intended to exculpate Albert and implicate Lawrence. Part of the testimony and the letters were objected to as hearsay but were admitted under the coconspirator exception to the hearsay rule. LSA-R.S. 15:455. Since the State established a prima facie case of conspiracy, supra, the evidence was properly admitted.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER TWENTY-TWO
Counsel for defendant objects to the trial court's failure to give the jury a special written charge as follows:
"Mere presence at or near a crime scene at or near the time the crime was allegedly committed, without more, does not render one guilty of the offense committed."
The trial court ruled that the contents of the requested charge were adequately covered in the general charge defining an accessory after the fact. The essence of the requested special charge; i. e., the fact that Albert may have been present when Barbara Roberts was murdered did not necessarily make him guilty of murder, was adequately covered by the general charge.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWENTY-THREE
Defendant complains that a statement in the prosecutor's closing argument constituted a reference to Albert's failure to testify in his own behalf and justified a mistrial. The comment was: "Every man has a right to be silent, but no man has a right to lie." (Tr. 1313) In context, it clearly referred to defendant's pretrial statement and not to his failure to testify. See State v. Frank, 344 So.2d 1039 (La., 1977).
This assignment of error is without merit.
For the reasons assigned, the conviction and sentence of defendant Dave Albert are affirmed.
AFFIRMED.
DENNIS, J., concurs, but disagrees with statement of law relative to exclusion of black jurors.
CALOGERO, J., concurs.
NOTES
[*] Chief Judge PAUL B. LANDRY, Jr., participated in this decision as Associate Justice ad hoc, in place of SUMMERS, C. J.
[1] Assignments of error two, three and nine have been abandoned.
[2] LSA-C.Cr.P. art. 857:

"The effect of granting a new trial is to set aside the verdict or judgment and to permit retrial of the case with as little prejudice to either party as if it had never been tried."
[3] LSA-R.S. 15:455:

"Each co-conspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."