399 So.2d 551 (1981)
STATE of Louisiana
v.
Thomas Rhuel SPELL.
No. 67058.
Supreme Court of Louisiana.
May 18, 1981.
Rehearing Denied July 2, 1981.[*]
*552 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan *553 Stansbury, Dist. Atty., Jack Derrick Miller, Asst. Dist. Atty., for plaintiff-appellee.
Nolan Edwards, of Edwards, Stefanski & Barousse, Larry Dupuis, Crowley, for defendant-appellant.
JASPER E. JONES, Justice Ad Hoc.[**]
Thomas Rhuel Spell was charged by grand jury indictment with the crime of second degree murder of Ricky Mire in violation of LSA-R.S.14:30.1. On December 20, 1979 defendant was convicted before a jury of twelve by a vote of eleven to one.[1] The defendant was sentenced to life imprisonment without eligibility for parole, probation, or suspension of sentence for forty years.
Defendant appealed his conviction. While the case was pending on appeal, defendant filed a motion for new trial based upon a contention that he had discovered new evidence which, if it had been introduced at trial, would probably have changed the verdict of guilty. The defendant's new trial motion contended that the new evidence could not have been discovered by him before or during the trial. This court remanded the case to the trial court for a hearing on defendant's motion for a new trial. See State v. Spell, 388 So.2d 754 (La.1980).
Following a hearing on the new trial motion the trial court denied the new trial. The case is now before this court on the merits of the appeal which were not considered before the remand and on an assignment of error designated as No. 5 directed at the trial court's refusal to grant a new trial.
The evidence at trial reflected the following facts:
On November 12, 1975, at about 4:00 p. m., Anthony Broussard was driving his car in the south part of Crowley, La. in the Parish of Acadia when he was stopped by defendant. Defendant asked Broussard to take him for a ride, and Broussard agreed to the request. Shortly after Broussard and defendant commenced their ride they observed Ricky Mire walking down the street. Defendant had Broussard stop and defendant went and talked to Mire. Mire returned to Broussard's car with defendant and got into the car with Broussard and defendant.
At defendant's direction Broussard drove to an isolated area in Crowley near a dried-up drainage canal and stopped. Mire and defendant got out of the car, and while Mire was standing near the front of the vehicle, defendant secured the car keys from Broussard, opened the trunk of the car and removed from it a tire tool. Mire and defendant then walked out of sight in the direction of the drainage ditch. Defendant carried the tire tool with him as he left the vehicle. Soon after defendant and Mire disappeared from view Broussard got out of the car and went in search of them and found them a short distance away, apparently over the drainage ditch levee. Broussard observed defendant push Mire who was in front of him. Broussard then returned to his car. After the elapse of about ten minutes defendant returned to Broussard's vehicle without Mire and advised Broussard not to ask any questions and to return him to his car which he had left at the point where he had entered Broussard's vehicle.
Broussard did not see the tire tool in defendant's hands when he returned to the car, but he heard defendant drop it upon the floor. When the pair arrived back at defendant's car, defendant got out of Broussard's car and the tire tool was not left in Broussard's vehicle. Broussard did not see defendant take the tire tool out of his car. (These facts were obtained from the trial testimony of Anthony Broussard).
*554 At about 5:00 p. m. that afternoon, three horseback riders found Mire in the drainage ditch apparently unconscious with his head and face covered with blood. There was a lot of blood on the ground near Mire. They notified the sheriff's office who obtained an ambulance and carried Mire to a Crowley hospital where his head was bandaged in the emergency room. The parish coroner arrived at 6:30 p. m. and observed that Mire was in a critical condition and ordered his immediate transfer to a Lafayette hospital where Mire died at 9:35 p. m. that night.
Mire's body was returned to Crowley and examined by the parish coroner who testified he died from several head injuries that appeared to have been caused by a blunt instrument with a sharp end.
Defendant relies on five assignments of error for the reversal of his conviction and sentence.

ASSIGNMENT OF ERROR # 1
At trial a series of four black and white pictures designated as S-3 which were taken of Mire shortly after he was brought from the drainage ditch to the emergency room of the Crowley hospital, were admitted into evidence over defendant's objections. These pictures showed Mire's bandaged head with his head, face, neck, and upper chest covered with dried blood.
Two black and white pictures were admitted into evidence designated as S-4 which were taken of Mire's head after his body was returned from Lafayette to Crowley. These pictures of decedent's shaved head showed the several cuts across decedent's skull which the coroner testified showed multiple open skull fractures caused by multiple blows to the face and head. He expressed the opinion that the numerous injuries were inflicted with a blunt instrument, perhaps with a sharp, narrow end. He testified Mire died from massive brain damage caused by multiple skull fractures. He made this determination from the examination of Mire's body and stated that the pictures reflected the extent of the injuries upon which he made his determination of the cause of death.
Defendant made no objection to the introduction into evidence of S-4 but objected to the pictures designated as S-3 on the grounds they had no probative value and served only to inflame the jury. He contends that S-4 adequately shows the nature and extent of the wounds.
The test of admissibility of allegedly gruesome pictures is whether their probative value outweighs the possible prejudice that may result from their display to to the jury. State v. Myles, 389 So.2d 12 (La.1979); State v. Scott, 337 So.2d 1087 (La.1976); State v. Gilmore, 332 So.2d 789 (La.1976). Photographs of the deceased victim have generally been held relevant to prove the corpus delicti, to corroborate other evidence of the manner in which the death occurred, to establish the location, number and severity of wounds, and to establish the victim's identity. State v. Myles; State v. Scott, supra; State v. Williams, 343 So.2d 1026 (La.1977).
The photographs here objected to have probative value in that they show the bloody head and face of the victim in a substantially similar condition as was the condition of the victim at the time he was found in the drainage ditch. The pictures were taken shortly after the victim was brought from the drainage ditch. The pictures corroborate the testimony of the witness who found the victim in the drainage ditch and testified that large amounts of blood were on the victim's face and head and upon the ground near him. The pictures show the dried blood on the victim and corroborate the coroner's testimony that because of the dried blood he believed the victim had sustained his fatal injuries some two hours before his examination at approximately 6:30 p. m. These pictures taken before Mire's death supplement the pictures taken after his death and corroborate the testimony of the coroner as to the manner in which the death occurred and the location and severity of the wounds.
An examination of these black and white pictures showing substantial amounts of blood about the face and head of the victim *555 is unpleasant, but the pictures are not unusually gruesome and we conclude that their probative value outweighs any prejudice to the defendant that may have resulted from their display to the jury.
This assignment of error is without merit.

ASSIGNMENT OF ERROR # 2
The state called the 16 year old victim's half-sister as a witness. She testified, over defendant's objection, that about two weeks before the murder the victim told her he was in love with defendant who was his homosexual lover.
Defendant objected to this testimony on the grounds that it was an inculpatory statement requiring notice to defendant of an intention to use at trial. LSA-C.Cr.P. art. 768 provides:
If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
It is clear that this provision applies only to inculpatory statements made by defendant and the objectionable testimony related to statements made by the victim, and for this reason this contention is without merit.
Defendant in brief argues that the statement was evidence of other crimes committed by defendant and for this reason he was entitled to the Prieur State v. Prieur, 277 So.2d 126 (La.1973) notice. Defendant failed to base his objection on this ground at the time he made the objection at trial and cannot assert it for the first time in brief on appeal. State v. Risen, 357 So.2d 531 (La.1978).
Defendant objected to the testimony as hearsay and contends it is inadmissible because it was not covered by any of the exceptions to the rule that hearsay evidence is inadmissible.
Hearsay is an out-of-court assertion introduced to prove the truth of its content. State v. Weedon, 342 So.2d 642 (La.1977). Hearsay is generally inadmissible because of its historic unreliability and because of the unfairness to defendant who cannot test the truth of the statement by cross examination. State v. Thompson, 331 So.2d 848 (La.1976); State v. Sheppard, 371 So.2d 1135 (La.1979); State v. Weedon, supra.
Out-of-court statements of the decedent made within a few hours of the crime which were relevant to the circumstances immediately preceding the murder have been held admissible by this court. State v. Raymond, 258 La. 1, 245 So.2d 335 (1971); State v. Sheppard, supra. See also State v. Albert, 381 So.2d 424 (La.1980). In Raymond as the victim observed the approach of defendant, he stated he was hiding behind a tree because defendant would want him to have abnormal sexual relations. This occurred several hours before the homicide. One issue in the case was whether the victim and defendant were together on the night of the murder which occurred several hours after the victim made the out-of-court statement. The court held the out-of-court declaration tended to establish the likelihood of a later contact between the victim and defendant and was evidence of the victim's state of mind or emotional attitude toward defendant.
The state here contends the hearsay is admissible to show Mire's state of mind and attitude towards defendant. The state argues the hearsay explains why Mire got into the car with defendant and Broussard and why a few minutes later he got out of the car with defendant alone and went voluntarily to the site where he received his fatal injuries.
The hearsay found admissible in Raymond and Sheppard and alluded to as admissible in Albert, supra, were all declarations made by decedents within a few hours before their death.
In State v. Weedon, supra, we quoted with approval a concurring opinion in Raymond which explained the state of mind exception as follows:
"... conduct or declarations of the decedent shortly before his killing may sometimes be admissible as tending to show *556 the immediately antecedent circumstances explanatory of the killing and connecting the accused with it." Id. at 646.
In Weedon this court without discussion found inadmissible hearsay statements of the victim that she intended to leave the defendant-husband which were made three and five weeks before the wife's death, stating that these declarations "plainly do not fall within the Raymond rule."
The Raymond exception is inapplicable here and the hearsay testimony was inadmissible as it only related to the state of mind of the victim two weeks before his death and was not a declaration of the deceased made shortly before his death.
The hearsay testimony to the effect that defendant committed unsavory and illegal acts with the victim inferred defendant was a bad character and was prejudicial to him before the jury.
The state's witness Jenkins was called before the victim's sister's inadmissible hearsay was admitted. Jenkins testified that on October 5, 1979, while discussing the murder with defendant in the prison yard at Dixon Correctional Institute at Jackson, La., that the defendant told him of his homosexual relationship with the victim. Defendant told Jenkins that he killed Mire in order to prevent Mire from disclosing their relationship to defendant's wife. It is therefore evident that all of the information which the state placed before the jury with the inadmissible hearsay testimony of Mire's sister was already before the jury.
Inadmissible hearsay which is merely cumulative or corroborative of other testimony adduced at trial is considered harmless. State v. Sterling, 377 So.2d 58 (La. 1979); State v. McIntyre, 381 So.2d 408 (La.1980).
The admission of the objectionable hearsay is harmless error and this assignment of error is without merit.

ASSIGNMENT OF ERROR # 3
Defendant contends that the trial judge erred in admitting over his objection the testimony of Ronald Jenkins that defendant had told him he had killed the victim. Defendant contends that these inculpatory statements were made to Jenkins in confidence and were therefore inadmissible. Jenkins, an inmate of the prison, was assigned to the law library to help other prisoners with their legal problems by writing letters, preparing pleadings, and otherwise giving them whatever advice he could. Defendant contends that the information was a privileged communication because Jenkins was acting as an attorney in the law library at the Dixon Correctional Institute when the inculpatory statements were made to him by defendant.[2] Defendant cites no authority for his contention.
Jenkins was not an attorney and did not hold himself out as a lawyer. Defendant knew that Jenkins was a fellow inmate in the prison and was not an attorney. He voluntarily gave the information to Jenkins. The communication is not subject to the attorney-client privilege. In the case of State v. Lassai, 366 So.2d 1389 (La.1978), the court rejected the contention that a communication given by the defendant to a counselor at a drug abuse center was privileged under LSA-R.S. 37:2714 where communications to certified social workers are classified as privileged communication. The court there said:
"Nor does the record disclose a privilege which would prevent the evidentiary use of an admission by defendant to the director of counseling at the Euterpe Center; it was not shown that she was a social worker, and for that reason R.S. 37:2714 is not applicable. Privileges are narrowly construed, and will not be extended to the counselor solely because she was `in the same position' as a physician *557 (making R.S. 15:476 applicable) or social worker." Id. at 1390-1391.
Defendant's inculpatory statements to Jenkins were not subject to any privilege.
This assignment of error is without merit.

ASSIGNMENT OF ERROR # 4
During trial defendant's request for an earlier written statement taken from state's witness, Anthony Broussard, which was in possession of the prosecutor, was denied. Defendant contends that the statement contained statements inconsistent with Broussard's trial testimony and he desired to use the written statement for cross examination, and that the trial judge committed reversible error when she denied him the request for the statement.
Louisiana Code of Criminal Procedure Art. 844[3] requires a party to designate those errors which are to be urged on appeal. The scope of review is limited to those errors designated in the assignments of error and those discoverable by a mere inspection of the pleading. LSA-C.Cr.P. art. 920[4].
Defendant did not include the assignment of error here urged in the assignments of error submitted to the trial judge, and for that reason this assignment of error argued in brief is not before the court for review. State v. Spears, 350 So.2d 603 (La.1977); State v. Marrero, 363 So.2d 494 (La.1978).

ASSIGNMENT OF ERROR # 5
This assignment of error is directed at the trial judge's denial of defendant's motion for new trial on the ground of newly discovered evidence.
During the trial the state called Ronald Jenkins, an inmate of Dixon Correctional Institute at Jackson, Louisiana, as a witness. Jenkins testified that one of his duties at this prison was to work at the law library and assist other prisoners with their legal problems. His work included the preparation of letters and pleadings designed to secure modification of their prison terms from authorities in the criminal justice system. Jenkins was no lawyer and had no paralegal training. He indicated he had acquired some knowledge of the law and judicial procedure by association with his wife who was a court reporter.
Jenkins testified that on October 1, 1979, Thomas Spell who was also an inmate at DCI, came into the law library and sought advice concerning the pending charge against him of the murder of Ricky Mire. Jenkins testified during their discussion of the case that defendant admitted he had killed Mire. Jenkins further testified that on October 5, 1979, while he and defendant were engaged in a conversation on the prison yard, defendant again stated that he killed Ricky Mire. Defendant stated he killed Mire to prevent Mire from disclosing to defendant's wife that there was a homosexual connection between Mire and defendant.
After the trial Jenkins gave a deposition to defendant's attorney wherein he stated that the testimony he had given at trial that defendant had told him he had killed Mire was false and untrue. In the deposition Jenkins intimated he gave this false testimony in return for a promise from the district attorney, who was prosecuting defendant, to assist Jenkins in some way in connection with Jenkins' prison term.
Defendant relies upon the recantation by Jenkins of his trial testimony to support his motion for a new trial.
Grounds for a new trial are defined in LSA-C.Cr.P. art. 851 which provides in pertinent part:

*558 "The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegation it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
. . . . .
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
. . ."
At the hearing on the motion for a new trial Jenkins repudiated his recantation given in the deposition taken by defendant's attorney. Jenkins testified that his trial testimony to the effect that defendant twice told him he murdered Mire was true and correct. Jenkins testified the reason he changed his story after trial was that he was paid $2500 by defendant's father to change his story.
Defendant now contends the trial judge was in error in denying his motion for new trial because if the jury could hear the testimony from Jenkins that he changed his trial testimony after trial and then again adopted his trial testimony at the hearing on the new trial motion, that Jenkins' testimony would be so discredited that the jury would not believe him.
Defendant contends that because the evidence against him was only circumstantial with only Anthony Broussard and Ronald Jenkins giving testimony linking him directly with the crime, that when the effectiveness of Jenkins' testimony is severely impaired this probably would change the verdict.
The test to be applied in considering a motion for new trial based upon newly discovered evidence is whether the new evidence is so material that it ought to produce a different result from the verdict rendered at trial. The trial court has considerable discretion in evaluating the impact of newly discovered evidence on the verdict and its ruling will be disturbed on appeal only when there is a clear showing of abuse of that discretion. State v. Williams, 362 So.2d 530 (La.1978); State v. Huckaby, 368 So.2d 1059 (La.1979); State v. Manning, 380 So.2d 54 (La.1980).
Recantation of trial testimony should be looked upon with the utmost suspicion. It was held in State v. McDonald, 387 So.2d 1116 (La.1980), and State v. Tyler, 342 So.2d 574 (La.1977), that the trial judge did not abuse his discretion in denying a motion for a new trial based upon the recantation of trial testimony by a key witness. See also State v. Linkletter, 345 So.2d 452 (La.1977).
While the witness Jenkins recanted his trial testimony, he reaffirmed his trial court testimony when he testified on the motion for new trial and gave an understandable explanation for his out-of-court recantation.
These circumstances together with the testimony of Anthony Broussard, which provides substantial evidence of circumstances which strongly indicated that Mire was murdered by defendant, provide sound reasons for the trial judge to conclude that defendant's newly discovered evidence if introduced at trial would not have changed the verdict of guilty. We find no abuse of discretion in the trial judge's denial of the motion for new trial.
This assignment of error is without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are AFFIRMED.
NOTES
[*] Dixon, C. J., Calogero and Dennis, JJ., would grant a rehearing.
[**] Judges Pike Hall, Jr., Charles A. Marvin, and Jasper E. Jones of the Court of Appeal, Second Circuit participated in this decision as Associate Justices Ad Hoc, joined by Justices Pascal F. Calogero, Jr., James L. Dennis, Fred A. Blanche, and Harry T. Lemmon.
[1] Defendant had been convicted in a trial before a judge alone on November 17, 1978, but upon defendant's motion the trial court had granted him a new trial.
[2] LSA-R.S. 15:475Privileged communications between attorney and client

No legal adviser is permitted, whether during or after the termination of his employment as such, unless with his client's express consent, to disclose any communication made to him as such legal adviser by or on behalf of his client, or any advice given by him to his client, or any information that he may gave gotten by reason of his being such legal adviser.
[3] La.C.Cr.P. art. 844"The party appealing shall designate, in writing, those errors which are to be urged on appeal. This assignment of errors shall be filed within the time specified by the trial judge, but not later than five days prior to the return date.

The trial judge may submit such per curiam comments as he desires."
[4] La.C.Cr.P. art. 920"The following matters and no others shall be considered on appeal:

(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." [emphasis supplied].