499 So.2d 332 (1986)
STATE of Louisiana
v.
Phillip CLARK & Thomas Williams.
No. KA-3878.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1986.
*334 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William A. Marshall, Susan Scott Hunt, Asst. Dist. Attys., New Orleans, for appellee.
Michael S. Gallagher, Supervising Atty., John Luke Walker, Student Practitioner, New Orleans, for appellantThomas Williams.
Dwight Doskey, O.I.D.P., New Orleans, for appellantPhillip Clark.
Before GULOTTA, LOBRANO and ARMSTRONG, JJ.
GULOTTA, Judge.
Defendants, Phillip Clark and Thomas Williams, independently appeal from their convictions on three counts of armed robbery (in violation of LSA-R.S. 14:64) and consecutive sentences of 99 years at hard labor on each count. We affirm.
At approximately midnight on November 21, 1983, two men robbed the occupants of Mable's Bar on Rampart Street in New Orleans. One perpetrator, who carried a long wooden stick and a knife, cursed and threatened the victims, grabbing them and holding his knife to the throats of the female bar owner, a young female patron, and an elderly man. Meanwhile, his accomplice stood near the door and held customers at bay with a knife. Before fleeing with money from the patrons and the cash register, one of the perpetrators smashed a cigarette vending machine with the stick and left a broken piece of it behind.
Later the same morning, two men robbed at knife point the patrons of The Clinic Bar on Burgundy Street in the French Quarter. During this crime, a perpetrator grabbed a female patron by the hair, slammed her face into the bar, and cut her on her right side and on her face near her ear.
Based on descriptions of the robbers and their getaway van, defendants Clark and Williams were soon arrested at another French Quarter bar. They were identified shortly afterward by victims at both Mable's Bar and The Clinic Bar. A broken stick and a knife were found in the van, which had also been located in the French Quarter after a hit-and-run report.
Appealing, defendant Williams has raised five assignments of error, while defendant Clark raises two. We have found no errors patent.

IDENTIFICATION EVIDENCE
In his first assignment of error, Williams contends the trial judge erred in denying his motion to suppress the initial identification of him by the three victims. According to Williams, there was likelihood of misidentification because the victims viewed him at the scene under coercive circumstances while he and Clark were in police custody instead of at less suggestive lineup. He also points out that none of the three witnesses was able to observe him for a meaningful period of time during the robberies and could not positively identify him six months later at a lineup.
In Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) the United States Supreme Court enumerated several factors in determining the admissibility of identification evidence, including the following: the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of any prior description *335 to the police, the level of certainty displayed at the confrontation, and the time between the crime and the confrontation. State v. Prudholm, 446 So.2d 729 (La. 1984). To suppress an identification, a defendant must show that it was suggestive and that a reasonable likelihood of misidentification existed. State v. Prudholm, supra, State v. Crawford, 454 So.2d 868 (La. App. 4th Cir.1984). Identifications through one-on-one confrontations between a suspect and a victim are permissible when justified by the overall circumstances, especially when the accused is apprehended a short time after the event and is returned to the crime scene. A proper identification in such cases promotes accuracy and expedites the release of innocent suspects. State v. Williams, 420 So.2d 1116 (La. 1982); State v. Crawford, supra; State v. McKinney, 455 So.2d 1235 (La.App. 4th Cir.1984).
Applying these standards to the facts in the instant case, we find no grounds for excluding the victims' identifications of the defendants. Within hours after the first robbery, Lona Mae Snow, the owner of Mabel's Bar, positively identified Williams as a perpetrator. Although her attention was focused primarily on the co-defendant Clark, who had carried the stick and robbed the patrons at her bar, Snow recognized Williams as the bearded and long haired accomplice who had stood near the barroom door. At trial, she also identified clothing he had worn during the robbery and recognized a photograph of him. Although she had not positively identified him in a lineup six months post-robbery, Snow testified that Williams was then clean shaven and had shorter hair, quite unlike his appearance at the time of the crime.
Dennis Skowronski, a patron at The Clinic Bar, likewise identified Williams and his accomplice when they were exhibited at the scene by police within an hour after the robbery. Skowronski testified that he got a "good look" at Williams and his brown plaid shirt during the crime. Although Skowronski at first had concentrated primarily on defendant Clark, who had put a knife to him, he also concentrated on Williams at the other end of the bar, who screamed that it was a robbery and pushed Skowronski during the crime. Skowronski did not recognize the defendant at the later lineup, but positively identified Williams, his plaid shirt, and his photograph at trial.
Susan Allen, another patron at The Clinic Bar, also positively identified Williams and Clark at the scene after they had been arrested. Allen testified that Williams had grabbed her by the hair, put a knife to her, and slammed her into the bar, and cut her. Significantly, when Allen and her companion followed the fleeing robbers onto the street, Williams turned on Allen, brandished his knife, and threatened her from a distance of three feet by saying, "I don't want to have to kill you." Although Allen could not identify Williams at the lineup because his beard and mustache had been shaved and his hair had been changed, she positively identified him both at the scene and in court as her assailant.
An arresting police officer testified that all three victims positively identified the defendants as the robbers soon after the incident. According to the officer, Snow and Allen "exploded" with recognition, and Skowronski was also "very excited" upon seeing the two men.
The evidence considered, we conclude that all three victims had excellent opportunities to observe Williams and Clark during the crime and emphatically identified them at the scene and trial. In the totality of circumstances, the victims' failure to identify the defendants at the later lineup when their appearances had changed does not compel us to conclude there was any reasonable likelihood of misidentification. Accordingly, we find no merit to this assignment of error.

SEARCH OF VAN
In his second assignment of error, Williams contends that the trial judge erred in refusing to suppress a knife seized during a warrantless search of the getaway van. Although a police officer testified *336 that he had seen the knife on the seat of the vehicle, Williams points out that the State failed to prove that the weapon had been in plain view when non-testifying officers had arrived at the van earlier to investigate a hit-and-run report involving the vehicle. According to Williams, crime lab photographs of the van's interior show a blanket on the front seat that may have covered the knife when police first arrived.
At the hearing on the motion to suppress, one of the arresting officers testified that the broken stick and knife were visible from outside the van. The second arresting officer at first testified that the knife was on the floor of the vehicle, but later at trial stated that it was on the front seat. Although this officer acknowledged that a blanket was visible on the seat in photographs of the vehicle, he had no idea whether the blanket had covered the knife when the crime lab photographer took the picture or other officers had arrived on the scene before him.
The evidence considered, we conclude the trial judge correctly refused to suppress the physical evidence seized from the van. Under the "plain view" exception to the warrant requirement, the arresting officers properly seized the weapons that were visible from their vantage point outside the vehicle. Defendant's argument that the blanket may have covered the knife is speculative and does not destroy the State's prima facie proof on this issue.
Even assuming, arguendo, that the blanket had covered the knife and the "plain-view" exception would not apply in this case, the United States Supreme Court has held that unconstitutionally obtained evidence may be admitted at trial if it would inevitably have been seized by the police in a constitutional manner. Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). See also State v. Nelson, 459 So.2d 510 (La.1984), certiorari denied Nelson v. Louisiana, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 322 (1985); State v. Morello, 470 So.2d 903 (La.App. 4th Cir.1985), writ denied 477 So.2d 714 (La.1985). In the instant case, because the robbery victims specifically identified the defendants and the getaway van, probable cause existed to obtain a warrant to search the vehicle. Since the knife would have been discovered inevitably in a search pursuant to a warrant without any police misconduct, the weapon is admissible under this recent exception to the exclusionary rule.
Moreover, even if the Nix exception did not exist, the improper admission of the knife would be harmless error in this case. Three victims identified the defendants as the knife wielding robbers. In light of this direct evidence, there is no reasonable possibility that the admission of the physical evidence of the knife itself contributed to the convictions.

HEARSAY TESTIMONY
Both defendants further argue that the trial judge erred in allowing a police officer to testify that other bar patrons besides Snow, Allen, and Skowronski had identified defendants as the robbers. Clark further points out that the officer was likewise allowed to testify that a nontestifying patron at Mable's Bar had provided the license plate number of the getaway van. According to defendants, the credibility of the State's case was unfairly strengthened by this hearsay evidence. We disagree.
The Louisiana Supreme Court has held that a police officer may refer to statements made by other persons involved in a case to explain his own actions, such statements being admitted not to prove the truth of the assertions made but to explain the sequence of events leading to the arrest of the defendants from the viewpoint of the arresting officers. State v. Edwards, 406 So.2d 1331 (La.1981), certiorari denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). In the instant case, the officer's testimony about the absent victims' description of the getaway van and their identification of defendants explains the sequence of events leading to the defendants' arrests and bookings.
*337 Furthermore, inadmissible hearsay is considered harmless if it is cumulative or corroborative of in-trial testimony. State v. Spell, 399 So.2d 551 (La.1981); State v. McIntyre, 381 So.2d 408 (La.1980), certiorari denied McIntyre v. Louisiana, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980). Even if the officer's testimony were hearsay, it largely corroborated the testimony of the three victims present at trial.
Williams further contends that he suffered grave prejudice when the State improperly questioned the police officer about his arrest record in order to refer to Williams's Wisconsin residency and to link him to the Wisconsin registered getaway van. We reject this argument. During examination of the police officer, the judge sustained the defense's objection to a question about Wiliams's residency as reflected in his arrest register, and later instructed the jury to disregard the reference to Wisconsin as defendant's home state. No prejudice resulted under these circumstances and no mistrial was warranted. The robbery victim Allen properly testified about her personal observations of the defendants as they fled in a van bearing a Wisconsin license plate.

CLOSING ARGUMENT
Williams further argues that the trial judge committed reversible error in failing to declare a mistrial after the prosecution "deliberately attempted to poison the trial" by stating in closing argument that the getaway van with a Wisconsin license plate belonged to defendant Williams.
Even assuming that the prosecutor improperly commented on inadmissible evidence by alluding to Williams's Wisconsin residency, there are no grounds for reversal. Before improper argument can be considered as prejudicial, the court must be convinced that the objectionable reference influenced the jury and contributed to the guilty verdict. State v. Jarman, 445 So.2d 1184 (La.1984); State v. Sharp, 418 So.2d 1344 (La.1982).
In the instant case, the brief references linking Williams to the van with the Wisconsin license plate could not reasonably have contributed to the guilty verdict where the jury heard the strong identification testimony of three eyewitnesses. Under these circumstances, we find no reversible error.
This assignment lacks merit.

EXCESSIVENESS OF SENTENCES
In their final assignments of error, both defendants contend that they each received excessive consecutive sentences of 99 years at hard labor without benefit of probation, parole or suspension of sentence on each of the three counts. According to defendants, concurrent rather than consecutive sentences are generally imposed for offenses arising from a single course of conduct, and their prior records do not justify the severity of the terms. We disagree.
At the sentencing hearing, the judge noted that he had considered both the aggravating and mitigating circumstances listed in LSA-C.Cr.P. Art. 894.1. The judge noted that each of the defendants had a history of criminal activity. Clark had prior convictions for "strong-arm robbery" in Florida, and for forgery. Williams had a 14 year record of arrests for escape, grand theft, assault with a deadly weapon, auto theft, burglary, parole and probation violations, and convictions for drawing a deadly weapon, assault and battery, as well as for armed robbery. The judge further noted that defendants had acted violently in the instant case by terrorizing and injuring the patrons at the two bars, including Williams's physical abuse and cutting of the victim Allen, and Clark's threats to an elderly man, a female patron, and the bar owner at Mable's Bar. In view of the defendants' past criminality and their violent and abusive behavior in this case, we conclude that the sentences are justified.
We further find no error in the imposition of consecutive sentences. Even if the two robberies are considered as part *338 of a single course of conduct, the sentences are not excessive merely because they are imposed consecutively. See LSA-C.Cr.P. Art. 883; State v. Farria, 412 So.2d 577 (La.1982). Considering all the factors in the instant case, we cannot say the sentencing judge abused his discretion.
Accordingly, defendants' convictions and sentences are affirmed.
AFFIRMED.